# NATIONAL REGISTERED AGENTS, INC.

## SERVICE OF PROCESS SUMMARY TRANSMITTAL FORM

To: SALLE UYOO, GENERAL COUNSEL
UBER TECHNOLOGIES, INC.
405 HOWARD STREET, SUITE 550
SAN FRANCISCO, CA 94105

SOP Transmittal # 522327330

617-757-6401 - Telephone

Entity Served: UBER TECHNOLOGIES, INC. (Domestic State: DE)

Enclosed herewith are legal documents received on behalf of the above captioned entity by National Registered Agents, Inc. or its Affiliate in the State of MASSACHUSETTS on this 14 day of March, 2013. The following is a summary of the document(s) received:

1. **Title of Action:** Boston Cab Dispatch, Inc and EJT Management, Inc, Pltfs. vs. Uber Technologies, Inc., Dft.

2. **Document(s) Served:** COMPLAINT,DEMAND FOR JURY TRIAL,SUMMONS
   Other: Proof of Service of Process, Civil Action Cover Sheet, Notice of Appearance of Samuel Perkins, Notice of Appearance of Richard E. Brody, Notice of Appearance of Michael Stefanilo

3. **Court of Jurisdiction/Case Number:** Suffolk County Superior Court, MA
   Case # 130873BLS

4. **Amount Claimed, if any:**

5. **Method of Service:**

   _X_ Personally served by:      _X_ Process Server      ___ Deputy Sheriff      ___ U. S Marshall

   ___ Delivered Via:      ___ Certified Mail      ___ Regular Mail      ___ Facsimile

   ___ Other (Explain):

6. **Date and Time of Receipt:** 03/14/2013 01:30:00 PM CST

7. **Appearance/Answer Date:** Within 20 days after service, exclusive of the day of service

8. **Received From:**   Boston Cab Dispatch, Inc and EJT        9. **Federal Express Airbill #** 799308907470
   Management, Inc, Pltfs.
   Samuel Perkins
   Brody, Hardoon, Perkins & Kesten,
   LLP
   One Exeter Plaza
   699 Boylston Street
   Boston, MA 02116
   617-880-7100

   **10. Call Made to:** Not required

11. **Special Comments:**   SOP Papers with Transmittal, via Fed Ex 2 Day
    Image SOP

**NATIONAL REGISTERED AGENTS, INC.**                    Copies To:

Transmitted by Richard Herman

The information contained in this Summary Transmittal Form is provided by National Registered Agents, Inc. for informational purposes only and should not be considered a legal opinion. It is the responsibility of the parties receiving this form to review the legal documents forwarded and to take appropriate action.

ORIGINAL

## NATIONAL REGISTERED AGENTS, INC.

### SERVICE OF PROCESS SUMMARY TRANSMITTAL FORM

To:  SALLE UYOO, GENERAL COUNSEL
UBER TECHNOLOGIES, INC.
405 HOWARD STREET, SUITE 550
SAN FRANCISCO, CA 94105

SOP Transmittal # 522327330

617-757-6401 - Telephone

Entity Served: UBER TECHNOLOGIES, INC. (Domestic State: DE)

Enclosed herewith are legal documents received on behalf of the above captioned entity by National Registered Agents, Inc. or its Affiliate in the State of MASSACHUSETTS on this 14 day of March, 2013. The following is a summary of the document(s) received:

1. **Title of Action:** Boston Cab Dispatch, Inc and EJT Management, Inc, Pltfs. vs. Uber Technologies, Inc., Dft.

2. **Document(s) Served:**  COMPLAINT,DEMAND FOR JURY TRIAL,SUMMONS
Other: Proof of Service of Process, Civil Action Cover Sheet, Notice of Appearance of Samuel Perkins, Notice of Appearance of Richard E. Brody, Notice of Appearance of Michael Stefanilo

3. **Court of Jurisdiction/Case Number:** Suffolk County Superior Court, MA
Case # 130873BLS

4. **Amount Claimed, if any:**

5. **Method of Service:**

   _X_ Personally served by:          _X_ Process Server          ___ Deputy Sheriff          ___ U. S Marshall

   ___ Delivered Via:          ___ Certified Mail          ___ Regular Mail          ___ Facsimile

   ___ Other (Explain):

6. **Date and Time of Receipt:** 03/14/2013 01:30:00 PM CST

7. **Appearance/Answer Date:**  Within 20 days after service, exclusive of the day of service

8. **Received From:**  Boston Cab Dispatch, Inc and EJT          **9. Federal Express Airbill #**
Management, Inc, Pltfs.
Samuel Perkins
Brody, Hardoon, Perkins & Kesten,
LLP
One Exeter Plaza
699 Boylston Street
Boston, MA 02116
617-880-7100

**10. Call Made to:** Not required

11. **Special Comments:**  SOP Papers with Transmittal, via Fed Ex 2 Day
Image SOP

**NATIONAL REGISTERED AGENTS, INC.**                    **CopiesTo:**

**Transmitted by Richard Herman**

The information contained in this Summary Transmittal Form is provided by National Registered Agents, Inc. for informational purposes only and should not be considered a legal opinion. It is the responsibility of the parties receiving this form to review the legal documents forwarded and to take appropriate action.

ORIGINAL

# Commonwealth of Massachusetts

SUFFOLK, ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION

No. 13-0873 BLS

Boston Cab Dispatch, Inc. and
EJT Management, Inc.
, Plaintiff(s)

v.

Uber Technologies, Inc.
, Defendant(s)

## SUMMONS

To the above-named Defendant: Uber Technologies, Inc. c/o National Registered Agents, Inc., 155 Federal Street, Suite 700, Boston, MA 02110

You are hereby summoned and required to serve upon Samuel Perkins, Esq., Brody, Hardoon, Perkins + Kesten, LLP

plaintiff's attorney, whose address is One Exeter Plaza, Boston, MA 02116 , an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at Boston either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Witness, Barbara J. Rouse, Esquire, at Boston, the 13th day of March , in the year of our Lord two thousand thirteen .

*Michael Joseph Donovan*

Clerk/Magistrate

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.
3. TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED
   (1) TORT — (2) MOTOR VEHICLE TORT — (3) CONTRACT — (4) EQUITABLE RELIEF — (5) OTHER

FORM CIV.P. 1 3rd Rev. 20M-10/11

Deputy Sheriff Suffolk County

NOTICE TO DEFENDANT — You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.

## PROOF OF SERVICE OF PROCESS

I hereby certify and return that on _____, 201____, I served a copy of the within summons, together with a copy of the complaint in this action, upon the within-named defendant, in the following manner (See Mass. R. Civ. P. 4 (d) (1-5):

_____

_____

_____

Dated:_____,201_____.        _____

N.B.   TO PROCESS SERVER: --
       PLEASE PLACE DATE YOU MAKE SERVICE ON DEFENDANT IN
       THIS BOX ON THE ORIGINAL AND ON COPY SERVED ON DEFENDANT.

┌─────────────────────────────────────────┐
│                                ,201   .  │
└─────────────────────────────────────────┘

Commonwealth of Massachusetts

SUFFOLK. ss.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT
CIVIL ACTION
No. SuCV2013 - 00873 BLS

Boston Cab Dispatch, Inc. and , Plff(s).
EJT Management, Inc.

v.

Uber Technologies, Inc. , Deft(s).

SUMMONS
(Mass. R. Civ. P. 4)

(AFFIX FILING STAMP HERE)

1300593

| CIVIL ACTION COVER SHEET | DOCKET NO(S) B.L.S. | Trial Court Of Massachusetts Superior Court Department County: SUFFOLK |
|---|---|---|

| PLAINTIFF(S) | DEFENDANT(S) |
|---|---|
| Boston Cab Dispatch, Inc.<br>EJT Management, Inc. | Uber Technologies, Inc. |

| ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE Board of bar Overseers number<br>Samuel Perkins (0200554230C)<br>Brody, Hardoon, Perkins & Kesten LLP<br>One Exeter Plaza<br>Boston, MA 02116<br>617-880-7100 | ATTORNEY (if known) |
|---|---|

Origin Code Original Complaint

h.2 claims of unfair trade practices involving complex issues

TYPE OF ACTION AND TRACK DESIGNATION (See reverse side) CODE NO. TYPE OF ACTION (specify) TRACK IS THIS A JURY CASE? *
(B)[✓] Yes ( ) No

## B.H.2 (unfair trade practices--complex issues)   Track: (B)   Jury Case: Yes

The following is a full and detailed statement of the facts on which plaintiff relies to determine eligibility In to The Business Litigation Session.

The plaintiffs manage and dispatch medallion-bearing Boston taxis and are required to comply with state and Boston laws and regulations that protect public safety, prohibit discrimination, set maximum fares and ensure that taxi service is available in all areas of the city. The defendant operates a computerized transportation system that communicates with customers and with taxi cab drivers and livery car drivers by smart phone. The defendant's transportation system unlawfully converts livery cars into taxis without complying with applicable laws and regulations, and enlists Boston taxi drivers to use the defendant's system in violation of these laws and regulations. The BLS is the appropriate court because the case involves complex issues of trademark, ch. 93A, unfair competition and the federal Racketeer Influenced and Corrupt Practices Act.

* A Special Tracking Order shall be created by the Presiding Justice of the Business Litigation Session at the Rule 16 Conference.

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT.

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods." Signature of Attorney of Record

DATE: 3-18-2013



COMMONWEALTH OF MASSACHUSETTS

SUFFOLK , SS.                                SUPERIOR COURT
                                             C.A. NO:

---

BOSTON CAB DISPATCH, INC,          )
                                   )
        and                        )
                                   )            13-0873 &S
EJT MANAGEMENT, INC,               )
                                   )
        Plaintiffs,                )
                                   )    
        v.                         )
                                   )
UBER TECHNOLOGIES, INC.,           )
                                   )
        Defendant.                 )
---                                )

## COMPLAINT

Plaintiffs Boston Cab Dispatch ("Boston Cab") and EJT Management ("EJT")

(collectively referred to as "plaintiffs") complain against defendant Uber Technologies,

Inc. ("Uber") as follows:

## INTRODUCTION

1.  The plaintiffs provide taxi dispatch services and manage leased taxi cabs in the City

    of Boston, and have invested substantial capital in complying with City rules and

    state laws, developed over the last eighty years, that protect consumers, ensure

    public safety, and provide non-discriminatory service. Uber has created an illegal

    transportation service that violates state laws and Boston ordinances and deceives

    consumers about the fares they must pay, the safety of the cars and drivers

1

transporting them, the insurance coverage available, and the legality of Uber's service.

## PARTIES AND JURISDICTION

2. Plaintiff Boston Cab is a Massachusetts corporation with principal offices at 72 Kilmarnock Street, Boston, Massachusetts. Boston Cab is an approved taxi dispatch service ("radio association") under Boston Police Department Rule 403, "Hackney Carriage Rules and Flat Rate Handbook" ("Rule 403" or "Taxi Rules"). The owners of 500 Boston Taxi Licenses ("medallions") pay weekly membership fees to the Boston Cab Dispatch Radio Association in exchange for dispatching and related services.

3. Plaintiff EJT Management, Inc. ("EJT") is a Massachusetts corporation with principal offices at 60 Kilmarnock Street, Boston, Massachusetts. EJT has contracted with the owners of 370 Boston medallions to manage all aspects of the ownership, licensing and leasing of the owners' medallions and the taxis bearing these medallions. EJT's management agreements give it authority to seek legal protection of 370 medallion and taxi owners' rights against all forms of unfair competition and trademark infringement.

4. Plaintiff Boston Cab owns and is exclusive licensee of all trademarks, trade names, trade dress and goodwill associated with Boston Cab operations in the City of Boston. Boston Cab has strong, distinctive, and recognizable trademarks, trade dress and trade names associated with its taxi services. Every Boston Cab Dispatch member cab is painted with distinctive "Boston Cab" logos and color schemes approved by the City of Boston.

2

5. Defendant Uber is a Delaware corporation with principal offices at 800 Market Street, San Francisco, California. The Superior Court has personal jurisdiction over Uber, as Uber operates a transportation-for-hire service in the City of Boston and other Massachusetts communities, consisting of Uber black cars, SUVs, taxis and the recently-announced UberX.

6. Jurisdiction and venue are proper in The Suffolk Superior Court Business Litigation Session, as Uber is a foreign corporation doing business in Massachusetts and this litigation meets the standards of Superior Court Administrative Directive No. 09-1.

## FACTS

### *Regulation of Taxis in Boston*

7. The Boston taxi industry is highly regulated by state statutes, city rules and ordinances, and multiple agreements that specify how medallion owners, radio associations, drivers and credit card processers must operate together. These legal controls are designed to ensure that taxi services in Boston will operate safely and reliably.

8. The Massachusetts legislature has given the City of Boston authority to regulate all vehicles "used or designed to be used for the conveyance of persons for hire from place to place within the city of Boston." (See M.G.L. c. 40, § 22 and M.G.L. c. 159, Massachusetts Session Laws of 1930, Chapter 392 and the Session Laws of 1963, Chapter 386.)

9. The City, pursuant to the powers vested in it by the Massachusetts legislature, granted authority to the Police Commissioner ("Commissioner") of the Boston Police Department ("BPD") to enact Rule 403, the Hackney Carriage Rules and Flat

3

Rate Handbook, which applies to all vehicles "used or designed to be used for the conveyance of persons for hire from place to place within the city of Boston." ("Hackney Carriage Rules and Flat Rate Handbook," Boston Police Department Rule 403.1.I.a.) The Taxi Rules explicitly state that they are intended to be a "comprehensive and definitive listing of all regulations affecting the Hackney Carriage industry in the City of Boston . . ." (Taxi Rules, Section 1(II)(c).)

10. The current version of Rule 403 is the product of decades of revisions, designed to protect consumers, ensure public safety, safeguard competition, and provide non-discriminatory taxi services to all areas of the city and to the elderly and disabled. The plaintiffs and all medallion owners operating in Boston have invested significant capital and resources to develop systems and infrastructure that meet Rule 403's broad-ranging requirements.

11. Boston's taxi regulations use three fundamental methods of ensuring that Boston taxi service is safe, reliable, and non-discriminatory: First, the city issues a limited number of taxi licenses, called taxi medallions. A taxicab cannot operate legally in Boston without one of the 1825 city-issued taxi medallions, and medallion owners must have cabs that meet strict requirements concerning vehicle age, condition, and installed equipment (for example, computerized dispatch machines, taximeters and approved credit card machines). Second, every cab must be a member of an approved "radio association," such as plaintiff Boston Cab. There are currently seven approved radio associations, including plaintiff Boston Cab. Each approved Association must: a) operate a single, GPS-enhanced radio dispatch service for members of that association; b) create and require members to adopt the same

4

distinctive city-approved cab colors and trade names for all cabs in that

Association; and c) operate from a Boston business address, with a registered

telephone number and registered agent for the radio association. Third, every taxi

driver in Boston must have a Hackney Carriage Driver's License and comply with

extensive rules of conduct promulgated by the City of Boston (for example,

requirements for dealing with handicapped passengers, allowed fares and charges,

anti-discrimination requirements, and prohibitions on cell phone use).

*Uber*

12. Uber is a transportation service that owns no taxis or livery cars and pays none of

the substantial capital costs and ongoing expenses required to operate legal taxi and

livery car businesses. Uber offers three types of conveyance-for-hire vehicles to

Boston travelers—Uber Black Cars, Uber SUVs and Uber Taxis. Uber has

announced that it will soon introduce "UberX," a cut-rate, unlicensed taxi service.

13. Uber's transportation system communicates with customers through a free smart

phone application ("app"). The Uber app allows Boston consumers to summon a

taxi or a more expensive livery car, either a "black car" that seats four, or an "SUV"

that seats six. The user opens the Uber application, which displays a map of the

user's location (or designated pickup point), displays the available black cars, SUVs

and taxis in the neighborhood, and states how long the user will have to wait for

each type of car. Depending on how much the user wants to spend and how many

cars in each price range are nearby, the user then chooses the type of car they want.

Uber's out-of-state computer system then selects an Uber-affiliated car, displays the

5

driver's name and photograph on the user's smart phone, and sends a text message to the user with the driver's projected arrival time and cell phone number.

### Uber's Unlawful Approach to Competition

14. Uber's business plan cuts corners illegally and undermines critical safety provisions of Boston taxi laws. Uber's transportation system only succeeds because, unlike lawful competing taxi apps, it preys parasitically on established taxi services without paying for them and without obeying laws designed to protect taxi customers. Uber owns no cars, no medallions, no radio associations, and employs no drivers—preferring to pay nothing for infrastructure and profit from the investment of medallion owners and radio associations. It induces its taxi drivers ("partners") to illegally substitute Uber's computerized dispatching and credit card billing system for the seven legal dispatching systems and three legal billing systems in Boston--knowing full well that in so doing, the taxi drivers who sign up with Uber are violating the Taxi Rules of the City of Boston and their contracts with taxi owners.

15. Uber adopts illegal methods because it can only operate profitably by misappropriating the infrastructure of existing taxi services. There are dozens of smart phone taxi dispatching apps, any one of which could—if they also chose to operate illegally—beat Uber at is own game. Plaintiff Boston Cab Dispatch has already developed its own lawful competing app, "Boston Cab," available, like Uber's, from online app stores. In order to stay ahead of its competition (and attract investors), Uber is violating nearly all substantive Boston taxi laws, lying to its customers, forcing taxi drivers who sign up with Uber to violate licensing laws and

6

contracts with taxi owners, and discriminating unlawfully against handicapped, elderly and less wealthy users of public transportation.

16. Uber does not simply want to take control of revenue generated by licensed cabs. It also wants to undermine the existing Boston taxi market by having unregulated black cars and SUVs function as cabs. The City of Boston requires that all "conveyance[s] of persons for hire" that are dispatched, hailed, or available at taxi stands must have taxi licenses, and the City has only issued 1825 license "medallions." Uber simply ignores this legal limit—and public safety—by signing up an unregulated and unaccountable legion of black cars and SUVs and linking them to customers in direct competition with taxis and in direct violation of Boston's Taxi Rules.

17. Uber's full-tilt campaign to woo taxi and livery drivers is not a public-spirited attempt to modernize the taxi industry. It is, to the contrary, a carefully crafted plan to insert itself, at no cost and without legal authority, into the taxi infrastructure that has existed in Boston since 1930. Uber then profits by simultaneously flouting and taking parasitic advantage of a transportation system in which all other players must comply with safety rules and consumer protections established by state and city laws.

18. Eighty years of regulation in Boston has produced a set of rules designed to meet the needs and protect the rights of individuals who need a car and driver on short notice—i.e, a taxi. Technological advances have made taxi dispatching more efficient over the years, but Uber's approach ignores virtually all taxi regulations

7

designed to protect consumers who suffer from disabilities, who live in less secure

neighborhoods, or who simply cannot afford a limousine.

*Uber's Illegal Operation of Black Cars and SUVs*

19. Uber's business strategy is aimed directly at undermining the existing legal

protections consumers receive under the Boston Taxi Rules. Uber urges its

customers to use Uber-affiliated black cars and SUVs, rather than its taxis:

> Our classic black car option is the default. Choose this and either a high-end
> sedan or SUV will be curbside in minutes.

> (https://www.uber.com/cities/boston.)

20. Uber hopes that consumers will see their "classic" black cars and "high end" SUVs

as downmarket limousines, but in the ways that matter for public safety Uber's

black vehicles are fancy—and dangerous—taxis. They are taxis because all Uber-

affiliated cars—black cars, SUVs and taxis—are hailed by smart phone app,

assigned to customers through the same Uber computer system, and have fares

determined by Uber's metering device. Uber-affiliated black cars and SUVs now

function as roving conveyances for hire in Boston, and are assigned in response to

an "electronic hail" just as quickly as a taxi. Uber itself agrees that its black cars

and SUVs function as taxis, claiming to New York taxi regulators that the Uber

system is a "virtual hail" equivalent to standing on a street corner and flagging a cab.

21. All Uber-affiliated vehicles must, therefore, be considered "hackney carriages"

under Boston's regulations, and cannot operate legally without a medallion and

hackney-licensed driver. The Taxi Rules are clear:

> In the City of Boston, no person, firm, or corporation driving or having charge of
> a taxicab or other private vehicle shall offer the vehicle for hire for the purpose of

transporting, soliciting and/or picking up a passenger or passengers unless said
person is licensed as a hackney driver and said vehicle is licensed as a hackney
carriage by the Police Commissioner.

(City of Boston Code 16-15.05: Vehicle for Hire Ordinance) (Appendix I to Taxi
Rules).

22. Every black car and SUV hailed electronically by an Uber customer in the City of

Boston must, under the provisions of the Vehicle for Hire Ordinance quoted above,

have a medallion. None of them do, and all Uber black car and SUV services in

Boston are, therefore, operating illegally. This massive illegal operation puts the

public and consumers at risk in many ways.

*Risks of Uber's Illegal Operation of Black Cars and SUVs*

23. The Taxi Rules protect the public from dangerous vehicles by requiring that all

taxis be inspected to ensure they meet specific Taxi Rules standards for age,

condition, equipment, lack of damage and cleanliness. (Taxi Rules, Section III.)

Uber ducks these requirements entirely (and illegally) with its affiliated black cars

and SUVs. Uber tells its customers it inspects black cars and SUVs, but the

plaintiffs are informed and believe that while Uber superficially inspects these

vehicles and checks registration and insurance information when the owner first

signs up, Uber does not have a regular program of rechecking vehicle condition,

licensing or insurance.

24. The Taxi rules protect the public from dangerous cab drivers by requiring hackney

license applicants to meet seventeen criteria before they can even apply for a license,

including:

1. be twenty-one (21) years of age or older;

2. pass a standard examination demonstrating the ability to

9

speak, read, write and understand the English Language;

3. participate in Hackney Carriage testing and training as determined by the Inspector of Carriages;

4. have an original **Birth Certificate, Alien Card, Asylum Document, US Passport or Naturalization Papers**;

5. **not have a Hackney Carriage Driver's License that is revoked or suspended in any jurisdiction**;

6. have a valid Massachusetts Driver's License;

7. have had a Driver's license in the United States for at least two (2) years;

8. **not have been adjudged a Habitual Traffic Offender**, as defined by Massachusetts General Law Chapter 90 section 22F, or the equivalent in any jurisdiction, within the past five (5) years;

9. **not have any outstanding or unresolved driving infractions which could result in the applicants Driver's license being suspended or revoked in any jurisdiction**;

10. **not have had his or her Driver's License suspended for five (5) or more Surchargeable Incidents**, as defined by Chapter 211 of the Code of Massachusetts Regulations section 134, or the equivalent in any jurisdiction, within the past five (5) years;

11. **not have more than four violations of the Traffic Laws and/or At-Fault Accidents** as defined by Chapter 211 of the Code of Massachusetts Regulations section 134 or an equivalent department in the last three (3) years (violations and accidents occurring on the same date will count as only one) in any jurisdiction;

12. **not have any Operating Under the Influence of drugs or alcohol convictions** or dispositions under Massachusetts General Law Chapter 90 section 24D **within the past five (5) years** or the equivalent in any jurisdiction;

13. **not have any felony convictions within the last five (5) years** in any jurisdiction;

10

14. not have any drug convictions in the last five (5) years in
any jurisdiction;

15. not have any dispositions for a criminal offense, in any
jurisdiction, that would result in the denial of a license,
including admissions to sufficient facts or continues of an
offense without resolution, unless the circumstances of
such incident are reviewed by the Inspector of Carriages as
to the specific facts and circumstances and the applicant is
thus approved by the Inspector of Carriages;

16. not be required to register as a sex offender in any
jurisdiction; and

17. not have any outstanding or unresolved criminal court cases
in any jurisdiction which could result in the license being
denied if the Applicant was convicted of the alleged offense.

(Hackney Carriage Driver Standards, Taxi Rules Appendix I)(emphasis added).

25. Uber violates the Taxi Rules by signing up black car and SUV drivers who have not

met the Hackney License requirements, and Uber does not even bother to assure its

customers that these drivers could meet any of the Hackney Carriage Driver

Standards. According to Uber, anyone can drive an Uber-affiliated black car or

SUV in Boston as long as they have a conventional driver's license and insurance.

Here is Uber's complete description of the standards it applies in selecting drivers:

We carefully select the fleet partners we work with and ensure that they have
proper licensing and insurance.

(http://support.uber.com/entries/22346733-how-does-uber-select-drivers.)

26. Uber then attempts to reassure customers that, despite Uber's relaxed standard for

selecting partners, it takes steps to weed out unsuitable drivers:

We've also implemented a customer generated rating system for drivers. If a
driver's rating goes beneath a certain level, we will no longer do business with
them. We're careful to maintain a standard of only doing business with quality,
licensed drivers.

11

(http://support.uber.com/entries/22346733-how-does-uber-select-drivers.)

27. But Uber's alleged method of ensuring it has "quality" drivers consists of a five-star "rating system" by which Uber riders can choose to rate their driver immediately after the ride. Uber claims that if a driver dips below a certain star rating, Uber will "no longer do business with" him. But Uber does not tell its customers that every driver receives a five star rating just for signing up with Uber. The plaintiffs are informed, and believe, that a driver only drops below a "Five Star" rating if dissatisfied customers take the trouble to post negative reviews, and that Uber continues to use drivers even after they have received multiple negative reviews.

28. Uber's true stance on driver safety is revealed in the waiver it forces every customer to execute when they first register as an Uber user. This waiver demonstrates that Uber pretends to run a safe operation, but in reality refuses to screen its drivers or take responsibility for anything "dangerous, offensive, harmful to minors, unsafe or otherwise objectionable" its "quality" drivers do:

> The company may introduce you to third party transportation providers for the purposes of providing transportation. **We will not assess the suitability, legality, or ability of any third party transportation providers** and you expressly waive and release the company from any and all liability, claims, or damages arising from or in any way related to the third party transportation provider. **The company will not be a party to disputes, negotiations of disputes, between you and such third party providers.** We cannot and will not play any role in managing payments between you and the third party providers. Responsibility for the decisions you make regarding the services offered via the application or service (with all its implications) rest solely with you. **We will not assess the sustainability, legality or ability of any such third parties** and you expressly waive and release the company from any and all liability, claims, causes of action, or damages arising from your use of the application or service, or in any way related to the third parties introduced to you by the application or service. You expressly waive and release any and all rights or benefits under Section 1542 of the Civil Code of the State of California (or any analogous law of any state), which reads as follows: "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the

release, which, if known by him, must have materially affected his settlement with the debtor."

**The quality of the transportation services scheduled through the use of the service or application is entirely the responsibility of the third party provider who ultimately provides such transportation services to you. You understand, therefore, that by using the application and the service, you may be exposed to transportation that is potentially dangerous, offensive, harmful to minors, unsafe, or otherwise objectionable, and that you use the application and the service at your own risk.**

(https://www.uber.com/legal/terms#)(emphasis added).

### *Uber Discriminates Against Disabled, Elderly and Less Wealthy Riders*

29. Boston's Taxi Rules require every medallion-holder to be part of a Radio Association, and Associations must ensure that members comply with the Rules. The Taxi Rules include multiple provisions that protect poor, disabled and elderly riders against discrimination.

30. Customers in wheelchairs are protected by Taxi Rules requiring every association to have Wheelchair Accessible Vehicles (WAVs) in their fleet (Taxi Rules Section 7.I.d), with WAV-Certified drivers who must "respond to each call for a WAV taxi." Other Hackney Licensed drivers in conventional cabs must offer service to wheelchair users, and must notify their dispatcher immediately if the customer asks for a WAV taxi. Uber illegally flouts each of these obligations. The Uber app does not allow a customer to request a WAV taxi, and Uber takes no steps to provide WAVs, to provide WAV-certified drivers, or to have drivers working for Uber assist customers who need a WAV taxi.

31. The Taxi Rules Anti-Discrimination Clause states that:

A Hackney Carriage Driver may not refuse any passenger on the basis of race, sex, religion, disability, sexual orientation, national origin, or location of the passenger's pick-up or destination in any circumstance.

13

(Taxi Rules, Section 5.2.)

32. Uber-affiliated drivers can unlawfully ignore this requirement without any adverse consequences, forcing customers in less secure neighborhoods to use conventional taxis, and forcing conventional taxis to bear the full burden of complying with the Anti-Discrimination Clause.

33. Boston taxi drivers are required to accept multiple forms of payment, including cash, credit cards, vouchers and Boston Taxi Industry Elderly Program (BTIEP) coupons, which allow customers who are elderly, handicapped, disabled or suffer from cancer to pay discounted rates. (Taxi Rules, Section 9.II.b; Taxi Rules, Section 7.I.) Uber drivers cannot accept cash, coupons or vouchers. All payments—even tips— are charged automatically to the customer's preauthorized credit card. Uber's credit-card-only payment system discriminates against lower-income individuals without credit cards, and discriminates unlawfully against elderly, handicapped, disabled and cancer patients who, who have the legal right to use BTIEP coupons to pay for taxi trips.

*Uber Charges Illegal Fares and Lies to Customers*

34. Boston taxi rules protect consumers—and less wealthy customers—by establishing uniform fares. Charges for trips within Boston and to nearby suburbs ("Meter Rate Communities") must be displayed on a city-inspected and sealed Taximeter that calculates the fare based on time and distance. Trips to more distant towns are set by the Flat Rate Handbook. (Taxi Rules, Section 5.II.k, Section 10.II.c.).

35. For black cars and SUV's, Uber makes no pretense of obeying these fare limits, charging a flat rate plus additional charges per-mile or per-minute, depending on the

14

car's speed. This illegal variation in rates violates the City of Boston's policy in favor of uniform, non-discriminatory charges for taxi service.

36. When a customer chooses an Uber-affiliated Boston taxi, rather than an Uber black car or SUV, the fare is calculated differently. In a nod to the Taxi Rules, Uber's fares for taxis with Boston medallions begin with the Taximeter fare or Flat Rate. But Uber then "mandates" an illegal $1 "fee" and a 20% "gratuity" in addition to the maximum charges set by the Taxi Rules.

37. Uber claims that its fee is a mere $1 per taxi trip, and that drivers receive the full 20% "gratuity:"

> With Uber TAXI we'll automatically add **20% gratuity for the driver**, and you'll see it reflected on your receipt. We charge your credit card directly, so there's no need to hand any payment to the driver.

(https://www.uber.com/cities/boston#)(emphasis added).

38. Uber's claim that it receives only $1 and drivers receive the 20% gratuity is an outright lie. The truth is that drivers only get half of the 20% charge and the rest goes to Uber. Uber's lie is clever marketing, designed to trick customers into believing that they are paying the standard taxi fare, paying a standard 20% tip to the driver, and giving Uber only $1 for its services.

### Uber Operates an Illegal Dispatching Service

39. To ensure that Boston taxis comply with the Taxi Rules, Rule 403 requires that every taxi join a Radio Association. Each Association must have a membership of at least forty cabs. Approved Radio Associations are legally required to provide a broad range of services to assist the police, protect consumers, and make taxis available to elderly and handicapped passengers. These services include:

15

   i.    Twenty-Four (24) Hour Dispatch Capabilities;
   ii.   Two-Way Radio and Dispatch Service [amended by ix, below];
   iii.  Wheelchair Accessible Vehicle (WAV) Availability;
   iv.  Elderly Discount Re-imbursement Services;
   v.   Call/Dispatch Record Keeping and Reporting;
   vi.  Lost Or Found Property Reporting Procedures; and
   vii.  Dispatch services shall include record keeping that specifies:
         (1) the total number of calls for service;
         (2) the time and location of each request;
         (3) the Medallion number of the cab dispatched; and
         (4) the time and location of WAV's dispatched.
   viii. Global Positioning System tracking devices are mandatory and all Hackney Carriages shall be equipped with a GPS system approved by the Inspector of Carriages which shall allow the Inspector of Carriages and Medallion Owner to ascertain the whereabouts, activities and fare data of each vehicle via the internet at all times. Said system shall store such information in a retrievable form for 365 days. The association must provide the Inspector of Carriages with the user name and password necessary to access said system. Such information shall be searchable for the following data.

- Date, time, and location of passenger pick-up and drop-off
- Trip duration measured in time and mileage
- Trip number
- Itemized fare (tolls, surcharges, and tip amount for card payments)
- Payment type (Cash, Credit, Debit, Student ID, Voucher)
- Last four (4) digits of customer credit/debit, etc. account number
- Hackney Medallion number
- Hackney Drivers License number
- Status codes
- Date and time of taxicab dispatch
- "Breadcrumb trail" GPS-based location data. (real-time and historical)

   ix.   GPS enhanced dispatch services which enable the radio association to dispatch the Boston Licensed Taxi which can arrive at the location most quickly. Said system shall be equipped with a panic button utilized by the driver which will automatically notify the dispatcher of an emergency and the vehicle's location.

(Rule 403, Section 7.I.d.)

40. Only an approved radio association can dispatch taxis in Boston. (Taxi Rules, Section 7.) Uber is not, has never sought to be, and could not be an approved

16

association, and it violates the law every time its computers send a Boston taxi,

black car or SUV to an Uber customer in Boston.

41. Uber's transportation system benefits financially by enlisting black car and SUV

owners who have no medallions and are not members of a Radio Association. By

violating the medallion and Radio Association requirements, Uber unlawfully

evades any investment in medallions, cars, Wheelchair Accessible Vehicles,

registrations, insurance, dispatching equipment, protective partitions, taximeters,

credit card machines, and other public safety and anti-discrimination requirements

imposed by the Boston Taxi Rules. In circumventing the Taxi Rules with its

affiliated black cars and SUVs, Uber puts the public at risk in a variety of ways.

A. _Quality of Drivers_: Taxi Rules require all drivers to hold a Hackney License,

which is only granted to applicants who meet Rule 403's standards for testing,

training, criminal record, driving record, drug use and sex offender status.

Hackney License holders are held to an extensive set of rules, requiring them

to (for example):

   i.   not possess alcohol or permit open alcohol containers in their vehicle;
   ii.  not talk on a cell phone;
   iii. not smoke or permit smoking; and
   iv.  not discriminate against potential customers based on race, sex,
        religion, disability, sexual orientation, national origin, pickup location
        or destination or intoxication.

(Rule 403, Section 5.II.)

These rules are enforced by the Inspector of Carriages, who can conduct

hearings on complaints and suspend or revoke a license. Uber, in contrast,

does not require black car and SUV drivers in Boston to have anything more

than a conventional driver's license. Uber's substitute for the rigorous

Hackney License standards and disciplinary process is the Five-Star system described in ¶ 27, under which any driver with a license and insurance automatically gets Uber's highest rating.

B. *Quality of Owners*: Boston issues a limited number of medallions, and the Inspector of Carriages reviews each medallion applicant for suitability. (See Chapter 392 of the Acts of 1930; Taxi Rules, Section 2.II.b.i, b.ii.1-3, c.i, c.ii, c.iii and d.) Medallion owners must file annual reports of their financial condition, disclosing all liens, mortgages and judgments, can be required to provide tax returns, and must provide the Inspector with the names of every individual and organization with an ownership interest in the medallion. Knowing who really owns and controls medallions allows the Inspector to prevent taxi licenses from falling into the wrong hands, and knowing the financial condition of medallion owners assists the Inspector in setting rates that are fair to owners and the public. Uber enlists as many black cars and SUVs as it can, often dealing with individuals or small companies with a single black car or SUV. Uber knows virtually nothing about the financial stability, citizenship, criminal background, litigation record, affiliations or true ownership and control of the black car and SUV owners it describes as its "partners."

C. *Quality of Cars*: Uber showcases the luxury of its black cars and SUVs, but these vehicles lack essential protections required by the Taxi Rules for all dispatched-on-demand transportation services in Boston. For example:

18

i.   *Protective Partitions*: The Taxi Rules require all Boston cabs to have a
     protective barrier of metal and lexan between the front and back seats.
     (Rule 403, Section 3.III.c.iii.) These barriers not only protect drivers
     from assault and theft; they also prevent drunk or drugged passengers
     from interfering with the driver and causing accidents. Uber's
     marketing plays up the six-person capacity of its SUVs, encouraging a
     party atmosphere and increasing the risk that boisterous passengers
     will distract the driver—or worse. Uber black cars and SUVs have no
     partitions, putting drivers at risk and undermining a critical public
     safety program of the City of Boston.

ii.  *GPS Tracking and Panic Buttons*: Every Boston cab must be equipped
     with an Inspector-approved GPS system that gives the Boston Police
     internet access, both in real time and for a year after any trip, to the
     location of every cab, the pick-up and drop-off points, how the
     passenger paid, and the exact route followed. Every cab must also be
     equipped with a panic button that automatically sends the dispatcher
     an emergency signal and the location of the cab. Uber black cars and
     SUVs have no such approved equipment: Uber does not disclose what
     data it preserves on black car and SUV trips, and any such data is not
     accessible to the Boston Police. In an emergency, Uber black car and
     SUV drivers can't hit a panic button: they have to phone for help.

iii. *Taximeters and Flat Rates*: The fare for every Boston taxi trip is set by
     an inspected and sealed Taximeter or the Flat Rate Handbook,

19

ensuring that every customer pays the same rate. Uber black cars and
SUVs make no attempt to comply with these legally-mandated
maximum rates. Fares are set by Uber's proprietary algorithm, which
always charges more than the Boston taxi rate. Uber's user agreement
also allows it to use "surge" pricing when demand becomes "intense."
Uber took advantage of this contractually-permitted price gouging to
hike prices 625% early on New Year's Day 2012.

(http://blog.uber.com/2012/01/01/take-a-walk-through-surge-pricing/.)

42. Uber's illegal transportation system is not limited to black cars and SUVs. As stated
above, Uber also "partners" with Boston taxi cab drivers, who make an illegal side
deal with Uber to take its customers while simultaneously working a normal shift
dispatched by a Boston Radio Association. A Boston cabbie who accepts work from
the cab's approved radio association and from Uber is violating the Taxi Rules in
many ways. Examples include:

   A. *Illegal Fares*: By charging a 20% "gratuity" (half of which goes to Uber) and
      a $1 fee, the driver violates the maximum fare provisions of Rule 403.

   B. *Illegal Cell Phone Use*: Uber drivers must use cell phones to receive and
      accept Uber assignments and to communicate with the Uber customer. Uber's
      computerized system typically requires drivers to respond to an "electronic
      hail" within a few seconds or lose the job, increasing stress, distraction, and
      the potential for accidents. Uber then compounds the risk by requiring drivers
      to call the customer when the cab is close to the pickup point. The Taxi Rules

recognize that cabbies on cell phones are a risk, and prohibit such cell phone use. (Rule 403, Section 5.II.n.)

C. *Discrimination*: The Taxi Rules prohibit discrimination based on the passenger's personal characteristics (disability, age, gender, race, etc.). Uber's assignment system permits a driver to discriminate for any of these unlawful reasons.

D. *Refusal to Honor Payment Options*: The Taxi Rules ensure that customers without the means to use a credit card or smart phone can also pay by cash, voucher or discount coupon. Uber-affiliated taxis unlawfully limit these options, only allowing payment through the customer's smart phone, charging a credit card previously registered with Uber.

#### Uber Unfairly Competes With Boston Licensed Cabs and Livery Car Services That Comply With the Taxi Rules

43. Uber tries to avoid regulation of its black cars and SUVs by claiming they are livery cars. True livery cars provide prearranged transportation and are not subject to the Taxi Rules. But Uber's computerized service allows spur-of-the-moment assignment and "virtual hails" of Uber-affiliated cars driving in a customer's neighborhood, putting Uber's black cars and SUVs in direct competition with taxis, whether dispatched, hailed, or parked at a taxi stand.

44. Boston taxis must comply with regulations that protect the public from harm, prohibit discrimination against the disabled, the elderly and other victims of bigotry, and set maximum fares to protect the less wealthy. To comply with these regulations, Boston cabs must invest in equipment, training, and licenses, charge only prescribed fares, and serve all areas, including the less profitable sections of

21

the city. In contrast, Uber black cars and SUVs defy the Taxi Rules, skimming customers who are wealthy and sophisticated enough to use a smart phone to summon a ride. Uber's black car and SUV "partners" are a fleet of upscale gypsy cabs recruited by Uber to compete unlawfully and unfairly against licensed Boston cabs by ignoring the Taxi Rules.

45. In addition to competing unfairly and unlawfully against Boston taxis, Uber's black cars and SUVs compete unfairly against true livery car services, which need not comply with the Taxi Rules if they convey passengers on prearranged trips for flat rates. Uber's black cars and SUVs ignore these restrictions, are dispatched as quickly as Uber taxis, and thus have a substantial (and unfair) competitive advantage over livery cars services that comply with the Taxi Rules by refusing to participate in an on-demand dispatching system like Uber's.

46. The plaintiffs are informed, and believe, that many of Uber's black cars and SUVs also compete unfairly by unlawfully purchasing insurance that by law can only cover true livery cars. In Massachusetts, many livery cars and taxis are insured through the assigned-risk CAR program established by M.G.L. c. 175, § 113H. The CAR program insurance premiums for livery cars (called "car service" vehicles in the CAR regulations) are lower than the premiums for taxis. Under the CAR definitions, it is clear that Uber vehicles must pay the higher insurance rates charged to taxis, rather than car service cars. Taxis are defined as:

> a. *Taxicab or Similar Passenger Carrying Service*--a **metered** or unmetered motor vehicle with a seating capacity of eight or less that is **operated for hire** by or on behalf of the named insured or by an employee, but does not pick up, transport, or discharge passengers along a route.

(Commonwealth Automobile Reinsurers Commercial Automobile Insurance Manual, Section V—Public Transportation, § 73.D.2.a.)

Car service vehicles are defined as:

> c. *Car Service*--an unmarked for hire auto with a seating capacity of 8 or less which
> (1) is hired on a prearranged basis;
> (2) does not pick up hail fares on the street;
> (3) does not contain a rate meter, and does not charge for services based upon miles traveled if the trip is less than twenty-five miles;
> (4) operates on a scheduled business day, and is returned to the vehicle's base of operation for a continuous period of at least four hours in each twenty-four hour period;
> (5) is operated by the named insured, an employee, or an independent contractor of the named insured, in attendance as a chauffeur;
> (6) operates from a base with two-way communication;
> (7) primary payment method is by billing or credit card.

(Commonwealth Automobile Reinsurers Commercial Automobile Insurance Manual, Section V—Public Transportation, § 73.D.2.c.)

47. Uber-affiliated vehicles are not eligible for "car service rates" because Uber black cars and SUVs operate as taxis. They connect instantly with customers through Uber's computerized system, and thus "pick up hail fares on the street." The Uber GPS system calculates fares with "a rate meter," and fares are "charge[d] based upon miles traveled." These characteristics by definition require all Uber-affiliated vehicles to pay taxi insurance rates. Uber black cars and SUVs that pay car service rates thus compete unfairly by functioning as Boston taxis while paying substantially lower insurance rates than taxis. Uber and any affiliates who improperly obtain car service insurance are also putting customers at risk, as insurers may disclaim coverage for Uber-affiliated black cars and SUVs that have not paid taxi insurance rates.

23

48. Uber knows or should know that its affiliated black cars and SUVS are not paying

proper insurance rates and are putting Uber customers in jeopardy. Uber

nonetheless falsely assures customers that:

> All our driver partners are fully licensed w/ commercial insurance. You're all
> safe here :).

> (http://twitter.com/ryangraves/statuses/243081748131500032 (September 4,
> 2012).)

### *Uber Falsely Claims To Be Affiliated With Boston Medallion Owners*

49. Each time Uber assigns a Boston cab in response to an electronic hail, Uber

fraudulently leads its customers to believe that it is legally authorized to do so, and

that Uber is legally authorized to charge a fee and a 20% "gratuity" over and above

the maximum lawful fare set by the Taxi Rules.

50. Uber falsely leads customers to believe that the owners and operators of Boston Cab

taxis have approved these charges, and falsely suggests that Uber and the radio

associations, including Boston Cab, are "partners" in the Uber transportation system.

Having invested nothing to acquire and equip vehicles, purchase licenses, create

and equip radio associations, pay carrying costs for insurance, inspection and

regulatory compliance, Uber has unilaterally established a new system for linking

customers to cabs and tricked the customers into believing that cab owners and

radio associations, including Boston Cab, have granted Uber legal authority to sell

taxi services in Boston and collect fares.

### *Uber Unlawfully Interferes With Contractual Relations*
### *Between Licensed Taxis and Service Providers*

51. As stated above, the Taxi Rules require every medallion owner and Radio

Association to install thousands of dollars of integrated equipment, including an

approved, inspected and sealed Taximeter to measure fares; a GPS system that
allows the Radio Association and the Boston police to track every taxi all the time;
a panic button in case of emergencies; dispatching assignment equipment; and a
credit card payment machine. When Uber convinces Boston cab drivers to sign on
to Uber's service and get more fare-paying customers, Uber pays nothing for the
capital cost of this infrastructure. It simply diverts the fare, processing it through
Uber's credit card processing facility, and taking a fee before paying the driver
anything.

52. In order to afford the capital cost of required taxi equipment, Boston taxi owners
and radio associations reach agreements with one of three credit card processing
companies certified by the Inspector of Carriages as having appropriate technology
and security for wireless credit card payments from cabs. These credit card
companies pay for and install legally-required dispatching and fee processing
equipment in exchange for the right to collect credit card processing fees for fares,
and advertising revenue from city-approved video screens in licensed cabs.

53. Plaintiff Boston Cab Dispatch has an exclusive contractual agreement with Creative
Mobile Technologies, LLC ("CMT"), one of the three city-approved taxi credit card
processing companies. Under this contract, CMT purchases and installs thousands
of dollars of equipment required by the Taxi Rules. In exchange, CMT receives
transaction processing revenues when passengers pay with credit or debit cards.
Uber bypasses the credit card payment system installed in Boston Cabs, depriving
CMT of the processing fees that Boston Cab Dispatch is contractually obligated to
give CMT in exchange for CMT's installation of legally-required taxi

communications equipment. Uber's misappropriation of credit card fees unlawfully interferes with Boston Cab Dispatch's contract with CMT and violates the Taxi Rules.

54. The plaintiffs are informed, and believe, that Uber has agreements with drivers dispatched by all seven approved Boston radio associations, and that all seven associations have similar contracts, granting an approved credit card processor the right to receive processing fees when passengers pay fares by credit or debit card. Uber's diversion of credit card payments and fees interferes with all seven radio associations' contracts with credit card processers by stealing revenue that is legally committed to paying for safety equipment required in all Boston taxis.

*Uber's Brave New World—UberX*

55. As stated above, Uber's established operations in Boston seek to undermine the protections of the Taxi Rules by diverting taxi revenues and by replacing taxis with unregulated black cars and SUVs for wealthier taxi customers. In late February, 2013, Uber Boston announced a new "low-cost service option called **UberX**."

56. UberX is a cut-rate version of Uber Black Cars and SUVs. Uber's promotional material tells every owner of a Prius, Camry, Altima, Taurus or Fusion (2006 or later) that with a Massachusetts driver's license and a commercial insurance policy they can become an Uber taxi simply by demonstrating "city knowledge and professionalism" and completing a one-hour "on-boarding session." Car owners can be corporations, LLCs, or even a DBA (an individual Doing Business As any company name they choose). Equipment need not meet any of Taxi Rules standards. Drivers need not pass any of the criminal record and driving record standards for

26

Boston taxi drivers, and Uber will allow its new UberX drivers to discriminate against riders and neighborhoods that until now have been protected by the Taxi Rules. UberX-affiliated cars will be assigned by a set of computers with no real-time connection to the Boston Police Department and no ability to respond to public safety emergencies.

57. By shirking all regulation, UberX can charge lower rates than medallioned cabs. Uber's goal is supplant taxis in the wealthiest and most heavily traveled areas of Boston, leaving licensed cabs to serve less lucrative segments of the market.

58. Uber's business plan is not difficult to understand. It intends to control the entire Boston private transportation system from limousines to taxis. If it is allowed to compete illegally and unfairly by ignoring the Taxi Rules, Uber will put Boston travelers at risk—forcing them to accept wildly fluctuating "surge pricing," uninspected cars, unqualified drivers and anonymous car owners. Uber aims to control an entire transportation system and take no responsibility for any feature of that system beyond collecting the fares. In place of all the protections Boston's Taxi Rules provide to travelers of all ages, physical abilities and financial means, Uber provides the following:

> **We will not assess the suitability, legality, or ability of any [driver or owner] and you expressly waive and release [Uber] from any and all liability**
>
>         *                      *                      *
>
> **[Uber] will not be a party to disputes, negotiations of disputes, between you and such [drivers or owners].**
>
>         *                      *                      *

27

> We will not assess the sustainability, legality or ability of any such [drivers or owners].

> \*               \*               \*

> The quality of the transportation services scheduled through the use of [Uber] is entirely the responsibility of the [driver or owner] who ultimately provides such transportation services to you.

> \*               \*               \*

> You understand, therefore, that by using [Uber], you may be exposed to transportation that is potentially dangerous, offensive, harmful to minors, unsafe, or otherwise objectionable, and that you use [Uber] at your own risk.

(https://www.uber.com/legal/terms#.)

## COUNT I

### MISREPRESENTATION OF SERVICES IN VIOLATION OF LANHAM ACT, 15 U.S.C. § 1125(a)(1)(B)

59. Plaintiffs incorporate the allegations of Paragraphs 1-58 of this Complaint here.

60. By representing to consumers in its commercial advertising and promotion that

Uber-assigned taxis are operating lawfully in Boston, as stated above, Uber falsely

describes facts and falsely represents facts, thereby misrepresenting the nature,

characteristics and qualities of its services, in violation of 15 U.S.C. §

1125(a)(1)(B).

61. Uber's misrepresentations have caused harm to the plaintiffs.

## COUNT II

### MISREPRESENTATION OF CONNECTION, ASSOCIATION, SPONSORSHIP AND APPROVAL OF LAWFUL TAXI ASSOCIATION IN VIOLATION OF LANHAM ACT, 15 U.S.C. §1125(a)(1)(A)

62. Plaintiffs incorporate the allegations of Paragraphs 1-61 of this Complaint here.

28

63. By fabricating a nonexistent "partnership" with Boston taxi owners and misrepresenting its legal authority to operate a dispatch service, as alleged above, Uber has used false descriptions and representations of fact to cause confusion and mistake in consumers, who are likely to believe that Uber is affiliated with, connected with, associated with, sponsored by, and approved by Boston medallion owners, including plaintiff EJT Management, Inc. and lawful Radio Associations, including plaintiff Boston Cab Dispatch, Inc., in violation of 15 U.S.C. § 1125(a)(1)(A).

64. Uber's misrepresentations have caused harm to the plaintiffs.

COUNT III

**UNFAIR AND DECEPTIVE ACTS AND PRACTICES
IN VIOLATION OF M.G.L. c. 93A, § 11**

65. Plaintiffs incorporate the allegations of Paragraphs 1-64 of this Complaint here.

66. Uber has engaged in a series of false representations that constitute unfair and deceptive acts and practices in commerce, including, but not limited to:

   a) Falsely claiming an affiliation with medallion owners and radio associations;

   b) Falsely claiming that it only collects a $1 fee and pays the full 20% "gratuity" to taxi drivers;

   c) Falsely claiming that its taxi service is lawful under Boston Taxi Rules;

   d) Falsely claiming that its black cars, SUVs and UberX vehicles do not need to be licensed and regulated as taxis in Boston.

67. Uber's unfair and deceptive acts and practices in commerce have caused harm to the plaintiffs.

29

## COUNT IV

### UNFAIR COMPETITION
### IN VIOLATION OF M.G.L. c. 93A, § 11

68. Plaintiffs incorporate the allegations of Paragraphs 1-67 of this Complaint here.

69. By unlawfully operating its taxi, black car, SUV and UberX transportation services without incurring the expense of compliance with Massachusetts and Boston laws, as alleged above, Uber unfairly competes with plaintiffs, in violation of M.G.L. c. 93A, § 11.

70. By diverting revenues for credit card processing that the plaintiffs are contractually obligated to pay to CMT, Uber unfairly competes with the plaintiffs.

71. Uber's unlawful competition has caused harm to the plaintiffs.

## COUNT V

### COMMON LAW UNFAIR COMPETITION

72. Plaintiffs incorporate the allegations of Paragraphs 1-71 of this Complaint here.

73. By unlawfully operating its taxi, black car, SUV and UberX transportation services without incurring the expense of compliance with Massachusetts and Boston laws, as alleged above, Uber unfairly competes with the plaintiffs.

74. By diverting revenues for credit card processing that the plaintiffs are contractually obligated to pay to CMT, Uber unfairly competes with the plaintiffs.

75. Uber's unfair competition has caused harm to the plaintiffs.

## COUNT VI

### INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONSHIPS

76. Plaintiffs incorporate the allegations of Paragraphs 1-75 of this Complaint here.

30

77. By inducing Boston taxi drivers, including those driving cabs managed by plaintiff
    EJT Management, Inc. and those who are members of Boston Cab Dispatch, Inc., to
    violate the Taxi rules and the terms of their leases, Uber intentionally interferes
    with the contractual relationships between the plaintiffs and cab drivers.

78. Uber's intentional interference with the contractual relationships between the
    plaintiffs and Boston cab drivers has caused the plaintiffs harm.

## COUNT VII

### VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT "USE OR INVEST" PROHIBITION, 18 U.S.C. § 1962(a)

79. Plaintiffs incorporate the allegations of Paragraphs 1-78 of this Complaint here.

80. By using the internet to transmit fraudulent misrepresentations to Boston consumers
    about fares in Uber taxis and false claims of an association between Uber and
    Boston Cab Dispatch, Uber violates the federal Wire Fraud statute, 18 U.S.C. §
    1343. These fraudulent representations have been transmitted to Boston users of the
    Uber taxi transportation system thousands of times over a period in excess of five
    months.

81. Uber's thousands of violations of the federal Wire Fraud act over a period of over
    five months with Boston Uber customers are a continuous, related series of
    predicate acts that constitute a pattern of racketeering activity under the Racketeer
    Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961(5).

82. Uber derives income from its wire fraud violations by enlisting Boston Cab
    Dispatch drivers to drive Uber customers, diverting all credit card payments by

31

Uber customers through Uber's collection system, and collecting illegal fees from those payments.

83. The plaintiffs are informed, and believe, that Uber uses some of the income illegally derived from diverted Boston taxi fares in its ongoing operation of the Uber transportation system. The Uber transportation system is engaged in and affects interstate commerce.

84. Uber's investment of the proceeds of its racketeering activity in Uber's ongoing operations causes injury to the plaintiffs by providing investment funds used to expand Uber's network of black cars, SUVs, and UberX vehicles. These taxi substitutes divert business from medallioned taxis that are managed by plaintiff EJT and that are members of the Boston Cab Dispatch Radio Association, causing economic injury to the plaintiffs.

85. Uber's conduct in using illegal profits from diverted Boston taxi fares to develop black car, SUV and UberX fleets that take business from licensed Boston taxis violates 18 U.S.C. § 1962(a), which makes it "unlawful for any person who has received any income derived. . .from a pattern of racketeering activity. . .to use or invest. . .any part of such income" in the "operation of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."

<u>COUNT VIII</u>

**VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT "INTEREST IN OR CONTROL OVER" PROHIBITION,**
**18 U.S.C. § 1962(b)**

86. Plaintiffs incorporate the allegations of Paragraphs 1-85 of this Complaint here.

32

87. Uber uses the fraudulent representations alleged above to expand its Boston customer base and increase the demand for Uber-affiliated taxis in Boston. This increased demand permits Uber to induce taxi drivers in Boston, including some drivers of taxis in the Boston Cab Dispatch Radio Association and some drivers of taxis managed by EJT, to enter into contracts with Uber.

88. The plaintiffs are informed, and believe, that the number of Uber-affiliated taxi drivers in Boston is expanding and that Uber is thereby increasing its control of the seven radio associations that make up the Boston taxi transportation system, including control of dispatching, control of selection of the customers and neighborhoods that receive taxi service, and control of fares paid by taxi customers.

89. Uber's conduct violates 18 U.S.C. § 1962(b), which "prohibits any person from acquiring or maintaining. . .any. . .control over an enterprise through a pattern of racketeering activity."

90. By exercising an increasing level of control of the taxi operations of the seven Boston radio associations and their medallion-owning members, as alleged above, Uber causes economic harm to the plaintiffs.

## COUNT IX

### VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT "CONDUCT OF ENTERPRISE" PROHIBITION, 18 U.S.C. § 1962(c)

91. Plaintiffs incorporate the allegations of Paragraphs 1-90 of this Complaint here.

92. By unlawfully generating demand for its services in Boston, as alleged above, and entering into contracts with a growing number of Boston taxi drivers, Uber has insinuated itself into the operations of approved Boston Radio Associations and

33

their medallion-owning members, including the plaintiffs, and has participated in the business of the Radio Associations and medallion owners by means of racketeering conduct.

93. Uber's conduct violates 18 U.S.C. § 1962(c), which makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."

94. Uber's participation in the conduct of the affairs of the Boston Radio Associations and Boston medallion owners has caused economic harm to the plaintiffs.

   WHEREFORE, the plaintiffs demand judgment in their favor on all counts, awarding them the defendant's profits from all fares collected by Uber-affiliated Boston taxis; damages caused to the plaintiffs by Uber's unlawful operation of black cars, suvs, UberX vehicles and taxis in Boston; multiple and punitive damages for Uber's unlawful operation of black cars, suvs, UberX vehicles and taxis in Boston; attorney's fees; interest; costs; and further relief found appropriate by the Court.

34

## DEMAND FOR JURY TRIAL

The Plaintiffs demand a trial by jury on all Counts.

The Plaintiffs,
By their attorneys,
BRODY, HARDOON, PERKINS &
KESTEN, LLP

Samuel Perkins  (BBO#542396)
Richard E. Brody (BBO#058260)
Michael Stefanilo (BBO# 684500)
Brody, Hardoon, Perkins & Kesten, LLP
One Exeter Plaza
Boston, MA 02116
(617) 880-7100
sperkins@bhpklaw.com
rbrody@bhpklaw.com
mstefanilo@bhpklaw.com

DATED: March 11, 2013

35

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK , SS.                                    SUPERIOR COURT
                                                 C.A. NO:

_____
                                        )
BOSTON CAB DISPATCH, INC,               )
                                        )
        and                             )
                                        )
EJT MANAGEMENT, INC,                    )
                                        )
            Plaintiffs,                 )
                                        )
        v.                              )
                                        )
UBER TECHNOLOGIES, INC.,                )
                                        )
            Defendant.                  )
_____        )

## NOTICE OF APPEARANCE OF SAMUEL PERKINS

TO THE CLERK OF THE ABOVE NAMED COURT:

        Kindly enter my appearance as counsel for the Plaintiffs with reference to the above-captioned action.

                        Respectfully submitted,

                        Samuel Perkins, BBO# 542396
                        BRODY, HARDOON, PERKINS & KESTEN, LLP
                        One Exeter Plaza
                        699 Boylston Street
                        Boston, MA 02116
                        (617) 880-7100
                        (617) 880-7171
                        sperkins@bhpklaw.com

Dated:  March 11, 2013

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK , SS.                                   SUPERIOR COURT
                                                C.A. NO: 13-0873-BLS

BOSTON CAB DISPATCH, INC,                  )
                                           )
        and                                )
                                           )
EJT MANAGEMENT, INC,                       )
                                           )
                Plaintiffs,                )
                                           )
        v.                                 )
                                           )
UBER TECHNOLOGIES, INC.,                   )
                                           )
                Defendant.                 )
                                           )

<u>NOTICE OF APPEARANCE OF RICHARD E. BRODY</u>

TO THE CLERK OF THE ABOVE NAMED COURT:

        Kindly enter my appearance as counsel for the Plaintiffs with reference to the
above-captioned action.


                        Respectfully submitted,


                        _Richard E. Brody_
                        Richard E. Brody, BBO# 058260
                        BRODY, HARDOON, PERKINS & KESTEN, LLP
                        One Exeter Plaza
                        699 Boylston Street
                        Boston, MA 02116
                        (617) 880-7100
                        (617) 880-7171
                        rbrody@bhpklaw.com

Dated: March 12, 2013

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK , SS.

SUPERIOR COURT
C.A. NO: 13-0873-BLS

_____
                                                    )
BOSTON CAB DISPATCH, INC,         )
                                                    )
        and                                       )
                                                    )
EJT MANAGEMENT, INC,                )
                                                    )
                Plaintiffs,                        )
                                                    )
        v.                                         )
                                                    )
UBER TECHNOLOGIES, INC.,          )
                                                    )
                Defendant.                      )
_____)

## NOTICE OF APPEARANCE OF MICHAEL STEFANILO

TO THE CLERK OF THE ABOVE NAMED COURT:

Kindly enter my appearance as counsel for the Plaintiffs with reference to the above-captioned action.

Respectfully submitted,

Michael Stefanilo, BBO# 684500
BRODY, HARDOON, PERKINS & KESTEN, LLP
One Exeter Plaza
699 Boylston Street
Boston, MA 02116
(617) 880-7100
(617) 880-7171
mstefanilo@bhpklaw.com

Dated: March 12, 2013