**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| BOSTON CAB DISPATCH, INC., | **MEMORANDUM IN SUPPORT OF** |
| and | **DEFENDANT'S MOTION TO DISMISS** |
| EJT MANAGEMENT, INC. | |
| Plaintiffs, | Civil Action No. 1:13-cv-10769-NMG |
| v. | |
| UBER TECHNOLOGIES, INC., | |
| Defendant. | |

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

**INTRODUCTION**

Plaintiffs – a "radio association" and a taxicab management company – ask this Court to assume the role of a municipal regulatory authority to determine whether Uber has violated certain local taxicab ordinances. Plaintiffs then seek to bootstrap these supposed regulatory offenses into two Lanham Act claims, two Chapter 93A claims, two common law claims, and three RICO claims, all on the underlying theory that Uber falsely represents that it is complying with these local ordinances. Plaintiffs' Complaint should be dismissed in its entirety.

First, Plaintiffs' Lanham Act and derivative state-law claims presuppose violations of municipal ordinances. Whether Uber has committed any such violations is, in the first instance, an issue squarely for the relevant local agencies to resolve. This Court is not the proper forum for adjudicating such local issues.

Second, the allegations that Uber has violated municipal ordinances when no such determination has been made does not and cannot constitute a misrepresentation or false statement giving rise to Lanham Act, Chapter 93A, and common law claims. Nor do Plaintiffs offer any cognizable theory of injury because Uber and Plaintiffs do not compete. Uber is neither a dispatcher nor a management company. Uber does not own any cars or employ any drivers. Uber has developed a software application that helps licensed drivers – who may also pay regular fees to Plaintiffs – connect with customers seeking to book transportation services.

Third, Plaintiffs fail to satisfy the heightened pleading standard for RICO claims. Plaintiffs fail to state a claim for wire fraud, thereby failing to state any claim for RICO liability. Nor have Plaintiffs identified conduct that satisfies each RICO provision Plaintiffs assert.

For these reasons, this Court should dismiss the Complaint, without leave to amend.

**FACTUAL BACKGROUND**

**I.      DEFENDANT UBER TECHNOLOGIES, INC.**

Defendant Uber Technologies, Inc. ("Uber") is a software technology company organized under Delaware law, with its headquarters in San Francisco, California. Uber does not own vehicles and does not employ drivers. *See* Dkt. No. 1-1 at ¶¶ 12, 14. Uber does not compete with taxicab or livery companies in providing transportation services to the public. Rather, Uber has developed a free, easy-to-use smartphone application ("App") that allows an individual ("User") to send a request for transportation service to a licensed limousine company or driver (singly, or together, "Partners") who has executed an independent contractor agreement ("Agreement") with Uber. The GPS receiver built into all modern smartphones detects the User's location and sends it to a driver-specific smartphone application that Uber provides to the Partner. Partners may accept or reject each User's transportation request made through the App. Partners may use the driver-specific application whenever they choose (*e.g.*, during "downtime" between trips scheduled through means other than the App).

Uber's App provides an innovative, simple, and reliable alternative to other models for booking transportation services, like telephoning a limousine company to make a reservation. A User must agree to Uber's Terms and Conditions before using the App, which state plainly that "THE COMPANY DOES NOT PROVIDE TRANSPORTATION SERVICES, AND THE COMPANY IS NOT A TRANSPORTATION CARRIER." Exh. A at 1 (emphasis in original). The sign-up screen also states: "Uber is a request tool not a transportation carrier." Exh. B at 2.

The functionality built into the App significantly enhances passenger safety, convenience, and satisfaction. Uber launched its App service in the greater Boston area in October 2011. The

App presently permits Boston-area Users to choose between two vehicle types – livery car and SUV ("Black") and taxicab ("TAXI").[1]

## II.    PLAINTIFFS

Plaintiff Boston Cab Dispatch, Inc. ("Boston Cab") purports to function as one of seven approved Boston taxicab dispatch services and purports to collect weekly membership fees from the owners of 500 Boston taxicab licenses ("medallions").  *See* Dkt. No. 1-1 at ¶¶ 2, 11.  Boston Cab purports to own "all trademarks, trade names, trade dress and goodwill associated with Boston Cab operations in the City of Boston."  *Id.* at ¶ 4.

Plaintiff EJT Management, Inc. ("EJT") purports to manage "all aspects of the ownership, licensing and leasing" of 370 Boston medallions "and the taxis bearing these medallions."  *Id.* at ¶ 3.  EJT claims that its "management agreements give it authority to seek legal protection . . . against all forms of unfair competition and trademark infringement."  *Id.*

## PROCEDURAL BACKGROUND

Plaintiffs filed a Complaint in the Trial Court of the Commonwealth of Massachusetts, Superior Court Department, Suffolk Country, Civil Action No. 13-0873BLS, on or about March 11, 2013.  *See generally* Dkt. No. 1-1.  The Complaint seeks damages based on alleged violations of the Lanham Act, Mass. Gen. Laws ch. 93A, the Racketeer Influenced and Corrupt Organizations Act, and common-law claims.  *See id.* at ¶¶ 59-94.

Uber received service of process of the Complaint on or about March 14, 2013.  *See* Dkt. No. 1-1.  Uber filed a Notice of Removal with this Court on April 3, 2013.  *See* Dkt. No. 1.

---

[1]  The App first supported TAXI booking requests in greater Boston in September 2012.

## LEGAL STANDARD

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* at 678 (internal quotations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). This Court should dismiss a complaint if the well-pleaded facts do not "possess enough heft to show that plaintiff is entitled to relief." *Ruiz Rivera v. Pfizer Pharms., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (internal quotations and alteration omitted).

## ARGUMENT

## I.     PLAINTIFFS FAIL TO STATE A LANHAM ACT CLAIM (COUNTS I-II)

This Court should dismiss all of Plaintiffs' Lanham Act claims because Plaintiffs' theory of liability is premised on alleged violations of a municipal ordinance based on Plaintiffs' own interpretations of that ordinance. Plaintiffs' interpretations here have neither been considered nor adopted by the municipal authority designated with the exclusive responsibility for enforcing it. Plaintiffs cannot create a private right of action for alleged violations of a municipal ordinance that does not confer a private right of action by pleading it as a Lanham Act claim. Plaintiffs cannot be permitted to bypass the authorities responsible for enforcing the ordinance. This Court should decline Plaintiffs' request to interpret and enforce the ordinance through this private cause of action.

This Court should also dismiss Plaintiffs' allegations under Section 43(a) of the Lanham Act – false advertising under Section 43(a)(1)(B) and false designation of origin under Section 43(a)(1)(A)[2] – because Plaintiffs have not stated a plausible claim under either section.

### A. Plaintiffs' Lanham Act Claims Improperly Presume Violations of the Boston Police Department's Hackney Carriage Rules ("Rule 403")

Plaintiffs cannot pursue Lanham Act claims in this Court because these claims assume a particular interpretation of Boston's taxicab regulations that the designated regulators have neither tested nor adopted. Specifically, Plaintiffs contend under the Lanham Act that "Uber falsely describes facts and falsely represents facts" "by representing to consumers . . . that Uber-assigned taxis are operating lawfully in Boston" and that Uber has "misrepresent[ed] its legal authority to operate a dispatch service. . . ." Dkt. No. 1-1 at ¶¶ 60, 63. Plaintiffs' allegations incorrectly assume that Uber has violated the Boston Police Department's Rule 403: Hackney Carriage Rules and Flat Rate Handbook ("Rule 403") (attached hereto as Exhibit C).[3]

Plaintiffs start with the framework that Rule 403 is "intended to be a 'comprehensive and definitive listing of all regulations affecting the Hackney Carriage industry in the City of Boston . . . .'" Dkt. No. 1-1 at ¶ 9 (quoting Rule 403, § 1(II)(c)). Plaintiffs then assail Uber with a litany of alleged Rule 403 violations. *See* Dkt. No. 1-1 at ¶¶ 21-25, 30-33, 35-42. These alleged municipal violations form the basis of Plaintiffs' Lanham Act claims, as well as the derivative Chapter 93A and common law claims. *See id.* at ¶ 60 (alleging in Count I false representations that "Uber-assigned taxis are operating lawfully in Boston"); ¶ 63 (alleging in Count II that Uber "misrepresent[s] its legal authority to operate a dispatch service"); ¶ 66 (alleging in Count III that Uber falsely claims "that its taxi service is lawful under Boston Taxi Rules" and other conduct

---

[2]  Section 43(a) of the Lanham Act, as amended, corresponds with 15 U.S.C. § 1125(a).

[3]  *Available at* http://www.cityofboston.gov/Images_Documents/Rules_tcm3-9921.pdf.

allegedly-proscribed by Rule 403); ¶ 69 (alleging in Count IV that Uber "unlawfully operat[es] its taxi, black car, SUV and UberX transportation services without incurring the expense of compliance"); ¶ 73 (same). Amidst all of these claims, Plaintiffs omit that the designated regulatory authorities have never held Uber subject to, much less in violation of, Rule 403.

Plaintiffs' litany of alleged municipal ordinance violations cannot constitute a claim under Section 43(a)(1) of the Lanham Act. Claimed violations of local ordinances are, in this instance, for the designated local municipal authority to determine. These alleged violations are not to be determined in private party litigation, where no private right of action exists. Further, the municipal authority has not even determined that any ordinances were violated. Under such circumstances, courts have specifically rejected the attempted use of the Lanham Act as a mechanism to have a federal court make an end-run around a municipal authority's discretion. The reasoning of *Dial A Car, Inc. v. Transp., Inc.*, 82 F.3d 484 (D.C. Cir. 1996) should control.[4] In that case, the plaintiff livery service possessed a valid license from the District of Columbia and attempted to sue two taxicab companies licensed in neighboring Maryland and Virginia for, *inter alia*, violations of Section 43(a) of the Lanham Act. *See Dial A Car*, 82 F.3d at 485-86. The plaintiff's claims were based on the defendants' alleged violations of an "administrative order" from the municipal taxicab regulators. *Id.* at 488. The D.C. District Court rejected plaintiff's Lanham Act claims, holding that plaintiff had failed to state a claim and was "simply using the Lanham Act to try to enforce its preferred interpretation of [the administrative order]."

---

[4] This Court previously adopted *Dial A Car*'s Sherman Act analysis. *See Wojcieszek v. New England Tel. & Tel. Co.*, 977 F. Supp. 527, 533-34 (D. Mass. 1997). Further, the Connecticut Superior Court applied *Dial A Car*'s Lanham Act analysis to the Federal Trade Commission Act. *See Pantanella v. Rowe*, No. MMXCV084009254S, 2009 WL 3740686, *4 (Conn. Super. Ct. Oct. 14, 2009) (Not Reported) (dismissing for lack of private right of action).

*Id.* The D.C. Circuit saw "no reason to reach out and apply federal law to [a] quintessentially local dispute" and affirmed. *Id.* at 488-89. The D.C. Circuit held:

> By entertaining appellant's claim, we would be transforming the Lanham Act into a handy device to reach and decide all sorts of local law questions. Not surprisingly, although the [Lanham] Act has been interpreted in literally hundreds of appellate cases since its enactment in 1946, [the court in *Dial A Car* could not] find a single case that purports to extend the Act to allow federal judges to interpret and *enforce* municipal regulations, thereby affording plaintiffs remedies over and above those provided by local law.

*Id.* at 490 (emphasis in original). *Dial A Car* warrants dismissal here for the same reasons.

This case also presents additional grounds for dismissal not discussed in *Dial A Car* because Rule 403 specifically forecloses private rights of action. Specific administrative procedures exist for adjudicating Rule 403 violations. Section 8 of Rule 403 defines compulsory administrative procedures for hearing and adjudicating potential violations of Boston's taxicab regulations. *See generally* Exh. C at 37-40. Section 8 requires that "[a]ny vehicle reported, by someone other than a Police Officer, to have violated any requirement of Rule 403 **shall be noticed of the filing of a Hackney Complaint by the Inspector of Carriages**." *Id.* at 37 (emphasis added). The Inspector of Carriages must serve a Hackney Complaint "in hand to the Owner or Driver by the Police Officer, or by certified mail . . . ." *Id.* Rule 403 provides for a hearing, an initial decision, and a multi-stage administrative appellate process involving both the Inspector of Carriages and an Appeals Board. *See id.* at 37-40. Rule 403 does not provide for any private right of action or private right of access to this Court.

If Plaintiffs wish to challenge Uber's obligation to comply and/or compliance with Boston's taxicab regulations, they should do so in accordance with Rule 403's procedures. "It is generally inappropriate for a court in a Lanham Act case 'to determine preemptively how [an agency] will interpret and enforce its own regulations' and thereby to usurp the agency's responsibility for interpreting and enforcing potentially ambiguous regulations." *Dial A Car,*

*Inc. v. Transp., Inc.*, 884 F. Supp. 584, 593 (D.D.C. 1995); *accord Dial A Car*, 82 F.3d at 489 ("[W]e hold that, at a minimum, there must be a clear and unambiguous statement *from the Taxicab Commission* regarding appellees' status before a Lanham Act claim can be entertained." (emphasis in original)).

Contrary to *Dial A Car* and the Boston municipal rules on which this Complaint depends, Plaintiffs seek to bypass the administrative process and have this Court endorse a preferred interpretation of Rule 403 that the appropriate regulators have never endorsed under the guise of Lanham Act, Chapter 93A, and common law unfair competition claims. This Court should therefore dismiss Counts I and II and the derivative Counts III-V.

**B.      Plaintiffs Fail to State a Claim under Section 43(a)(1)(B) (Count I)**

Plaintiffs also fail to state claims under each asserted provision of the Lanham Act. A claim under Section 43(a)(1)(B) of the Lanham Act requires proof of "at least the following three elements: (1) Defendants made false or deceptive advertisements or representations to customers; (2) those advertisements deceived a significant portion of the consuming public; and (3) Plaintiffs were injured by Defendants' conduct." *Brown v. Armstrong*, 957 F. Supp. 1293, 1301-02 (D. Mass. 1997). Plaintiffs meet none of these requirements.

*1.      Plaintiffs fail to identify any false advertisement or representation.*

The Complaint does not establish that Uber has made any false or deceptive advertisements. "It is axiomatic that, to establish false advertising, Plaintiffs must identify an advertisement or promotion containing false information. Section 43(a)(1)(B) of the Lanham Act, by its express terms, is limited to misrepresentations contained in 'commercial advertising or promotion.'" *Brown*, 957 F. Supp. at 1302.

The falsity of Uber's alleged statements assumes a reading of Rule 403 that neither the Inspector of Carriages nor any Appeal Board has adopted. Consistent with *Dial A Car*, this

Court should not make that judgment in the first instance. *See, e.g.*, *Dial A Car*, 884 F. Supp. at 593 ("It is generally inappropriate for a court in a Lanham Act case 'to determine preemptively how [an administrative agency] will interpret and enforce its own regulations' and thereby to usurp the agency's responsibility for interpreting and enforcing potentially ambiguous regulations."). This is especially so when Rule 403 sets forth adjudicative procedures that Plaintiffs seek to bypass. *See* Exh. C at 37 (requiring that "[a]ny vehicle reported, by someone other than a Police Officer, to have violated any requirement of Rule 403 ***shall be noticed of the filing of a Hackney Complaint by the Inspector of Carriages***" (emphasis added)).

<u>*2.      Plaintiffs fail to identify any consumer deception.*</u>

The Complaint does not allege the existence of actual consumer deception. Section 43(a) claims cannot survive without specific evidence of deception. *See Brown*, 957 F. Supp. at 1302 ("A second obstacle to Plaintiffs' theory . . . is that there is no evidence of consumer deception."). Plaintiffs must show "that Defendants' representations were either literally false or misleading" and that the literally false or misleading representation "is likely to influence the purchasing decision." *Id.* at 1303 (citing *Castrol, Inc. v. Pennzoil Co.*, 987 F.2d 939, 943 (3d Cir. 1993); *Johnson & Johnson * Merck Consumers Pharms. Co. v. Smithkline Beecham Corp.*, 960 F.2d 294, 297 (2d Cir. 1992); *U.S. Healthcare, Inc. v. Blue Cross of Greater Phila.*, 898 F.2d 914, 922 (3d Cir. 1990)). As in *Brown*, Plaintiffs here present no evidence that any consumers "would base their purchasing decision on [a] belief" in Uber's allegedly-false statements. *Id.* (citing *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 210 (9th Cir. 1989) ("[In] a suit for damages under Section 43(a), . . . actual evidence of some injury *resulting from the deception* is an essential element of plaintiff's case." (emphasis in original)); *Schutt Mfg. Co. v. Riddell, Inc.*, 673 F.2d 202, 206 (7th Cir. 1982) ("[Plaintiff] must demonstrate that it

has been damaged by actual consumer reliance on the misleading statements[.]")). Plaintiffs only make the conclusory assertion that "Uber's misrepresentations have caused harm to the plaintiffs." Dkt. No. 1-1 at ¶¶ 59-61. Plaintiffs' claim fails.

### 3. *Plaintiffs fail to show any resulting competitive injury.*

Plaintiffs have not shown any competitive injury traceable to the allegedly-false statements. "[T]he law is clear in the First Circuit that the plaintiff must assert some type of competitive injury to state a claim for false advertising under the [Lanham] Act." *Encompass Ins. Co. of Mass. v. Giampa*, 522 F. Supp. 2d 300, 310 (D. Mass. 2007). In *Giampa*, this Court dismissed Lanham Act counterclaims, *inter alia*, because "it is apparent from the pleadings that Encompass, an insurance company, is not in competition with any of the defendants, all of whom are providers of chiropractic services." *Id.* at 311.

Plaintiffs show neither competitive injury nor a specifically-offending advertisement or promotion, even though Plaintiffs must show both to survive dismissal. As in *Giampa*, Plaintiffs and Uber do not compete. Nothing in Rule 403, upon which Plaintiffs rely exclusively for their Lanham Act claims, even suggests that Uber and Plaintiffs **could** compete. Plaintiffs are radio dispatch and taxicab management services. *See* Dkt. No. 1-1 at ¶¶ 2-4. Plaintiffs admit that Uber is a software company, not a dispatcher or manager. *See id.* at ¶ 12. "Uber owns no cars, no medallions, no radio associations, and employs no drivers." *Id.* at ¶ 14. While Uber's App puts Users in touch with Partners, Uber does not itself provide TAXI or Black services. *See id.*

Logically, it is impossible to see how Plaintiffs would suffer competitive injury. Plaintiff Boston Cab, for example, derives its revenue from "weekly membership fees" paid by taxicab medallion owners. *Id.* at ¶ 2. Taxicab drivers pay this fee whether they have any riders at all or however they happen to get them. Plaintiffs' membership income does not go up or down

depending on whether a driver obtained fares through a radio dispatch system, street hails, the driver's own personal clients, or Uber's App. It makes no difference whether a driver picks up a fare because someone stood in the rain on a corner with her hand in the air or sat in a restaurant with a phone in her hand. Either way, the revenue to Plaintiffs remains constant, and Plaintiffs have not alleged facts to show that they suffer any direct, competitive damages. Nor have Plaintiffs tied any alleged damages to any specific advertising or promotion.

Because Plaintiffs fail to state a claim under Section 43(a)(1)(B) of the Lanham Act, this Court should therefore dismiss Count I without leave to amend.

### C. Plaintiffs Fail to State a Claim under Section 43(a)(1)(A) (Count II)

Plaintiffs fail to state a claim under Section 43(a)(1)(A) of the Lanham Act for many of the same reasons Plaintiffs fail to state a claim under Section 43(a)(1)(B). This Court has explained that whether a complaint adequately pleads a violation of Section 43(a)(1)(A) of the Lanham Act requires a five-pronged inquiry:

> In order to succeed on an infringement/false designation of origin claim under § 43(a)(1)(A), Plaintiffs must prove each of the following elements: (1) Defendants used a designation (any word, term, name, device, or any combination thereof); (2) the use was in interstate commerce; (3) the use was in connection with goods or services; (4) the designation or false designation is likely to cause confusion, mistake, or deception as to (a) the affiliation, connection, or association of defendant with another person, or (b) as to the origin, sponsorship, or approval of defendant's goods, services, or commercial activities by another person; and (5) plaintiff has been or is likely to be damaged by these acts.

*Brown*, 957 F. Supp. at 1300. Plaintiffs fail each of the five prongs.

First, Plaintiffs identify no specific "designation" allegedly misappropriated by Uber and further identify no "use" by Uber of this designation. Because there exists no evidence that Uber has used any particular designations belonging to Plaintiffs in or with reference to Uber's App, Plaintiffs' claim fails. *See id.* ("In the absence of any evidence that Defendants used either of the terms in or with reference to their products, this claim fails.").

Second, Plaintiffs identify no use of any designation owned by Plaintiffs in interstate commerce. Plaintiffs allege that Uber "fabricat[es] a nonexistent 'partnership' with Boston taxi owners," but Plaintiffs do not allege that Uber holds out this hypothetical, "nonexistent 'partnership'" in interstate commerce. *See* Dkt. No. 1-1 at ¶ 63. To the extent Plaintiffs allege that Users may associate Uber with Plaintiffs based on a logo adorning a taxicab driven by a Partner, such a confusion is both contrary to the express statements made by Uber to Users when Users sign up to use the App, *see* Exhs. A-B, and would be limited to the intrastate geographical reach of the Partners' taxicabs themselves. *See Obolensky v. G.P. Putnam's* Sons, 628 F. Supp. 1552, 1556 (S.D.N.Y. 1986), *aff'd* 796 F.2d 1005 (2d Cir. 1986) (rejecting Lanham Act claim, where publication with false statement never physically entered another state's stream of commerce). Plaintiffs fail to show use of any protected designation in interstate commerce.

Third, Plaintiffs do not allege that any wrongful use of a protected designation "was in connection with goods or services." Users seeking to connect with Partners through use of the App place a request prior to the arrival of the accepting Partner's vehicle, which Plaintiffs apparently contend is the source of any confusion. And, since Uber does not own any vehicles in the first place, Uber is not using any logo on a Partner's vehicle under the Lanham Act or for any promotional purpose. *See, e.g.*, Dkt. No. 1-1 at ¶ 14 ("Uber owns no cars, no medallions, no radio associations, and employs no drivers."). Plaintiffs fail to allege that Uber itself makes any use of any protected designation, much less in connection with any good or service.

Fourth, Plaintiffs cite no evidence that any consumers are likely to suffer confusion as the result of any unauthorized use of a protected designation. Plaintiffs' claim that Uber indirectly benefits from infrastructure it did not build itself does not establish, without more, that consumers suffer confusion as to the origin of the services rendered by Plaintiffs as distinct from

those rendered by Uber.  Uber makes clear with customers that Uber does not provide transportation services and does not own any taxicab or livery vehicles.  *See* Exhs. A-B.

Fifth, Plaintiffs fail to allege specific and causally-related damages.  As with Plaintiffs' claims under Section 43(a)(1)(B), no competitive harm can result when Plaintiffs and Uber do not compete.  Nor could Plaintiffs suffer harm because their revenue does not depend on how or how often medallion owners obtain passengers.  *See generally supra*, Section I(B)(3).

This Court should therefore dismiss Count II without leave to amend because Plaintiffs fail to state a claim.

## II.     PLAINTIFFS FAIL TO STATE CHAPTER 93A CLAIM (COUNTS III-IV)

This Court should dismiss Plaintiffs' Mass. Gen. Laws ch. 93A claims, which derive from Plaintiffs' Lanham Act claims, because: (1) Plaintiffs lack a private right of action under Rule 403; and (2) Plaintiffs have not stated an independent basis for proceeding under Chapter 93A.  Chapter 93A prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Mass. Gen. Laws ch. 93A, § 2(a).  Here, Plaintiffs' allegations under Chapter 93A either explicitly (through incorporation by reference) or implicitly (by repeating conduct alleged as violating Rule 403 earlier in the Complaint) restate their Lanham Act claims as the basis for their Chapter 93A claims.  *See generally* Dkt. No. 1-1 at ¶¶ 65-71.  Because Plaintiffs' Lanham Act claims fail, Plaintiffs' Chapter 93A claims also fail.

Plaintiffs' Chapter 93A claims also fail because Plaintiffs fail to identify an existing statute or regulation that grants Plaintiffs a private right of action.  A Chapter 93A claim cannot withstand a motion to dismiss if the "existing statutes, rules, regulations, or laws" upon which a plaintiff bases the Chapter 93A claim do not confer a private right of action.  In *Katz v. Pershing, LLC*, the plaintiff based her Chapter 93A claims on violations of Chapter 93H's data privacy laws, even though "the power to enforce Chapter 93H is limited to the State Attorney General."

806 F. Supp. 2d 452, 458 (D. Mass. 2011). This Court granted defendant's motion to dismiss under Fed. R. Civ. P. 12(b)(6), holding that, "[b]ecause Katz cannot maintain an action under Chapter 93A based on an alleged violation of Chapter 93H, she cannot look to the state consumer protection statutes to establish standing." *Id.* at 458, 461. Plaintiffs' Counts III and IV fail here because the only regulation identified by Plaintiffs – Rule 403 – confers exclusive jurisdiction in the Police Department and Inspector of Carriages and does not confer a private right of action on Plaintiffs. *See* Exh. C at 37-40; *see also supra*, Section I(A).

This Court should dismiss Plaintiffs' Section 93A claims without leave to amend because Plaintiffs fail to state a claim under the Lanham Act or Chapter 93A and lack a private right of action under Rule 403.

## III. PLAINTIFFS FAIL TO STATE AN UNFAIR COMPETITION CLAIM (COUNT V)

This Court should dismiss Count V because Plaintiffs' common law unfair competition claim is entirely derivative of its Lanham Act and Chapter 93A claims, which should also be dismissed for failure to state a claim. Plaintiffs identify no common law theory of liability independent of the allegations contained in Counts I-IV. To the extent this Court dismisses Counts I-IV, it should also dismiss Count V.

## IV. PLAINTIFFS FAIL TO STATE AN INTENTIONAL INTERFERENCE CLAIM (COUNT VI)

This Court should dismiss Count VI because Plaintiffs have not stated a claim for tortious interference. Plaintiffs incorporate and repackage the allegations of municipal ordinance and regulation violations as a claim for tortious interference with contractual relations under Massachusetts common law. *See* Dkt. No. 1-1 at ¶¶ 76-78. Just as Plaintiffs' other claims based on alleged violations of these ordinances and regulations fail, so too does this claim.

Plaintiffs also fail to plead the elements of intentional interference: (1) that plaintiff had an advantageous relationship with a third party; (2) that defendant knowingly induced a breaking of that relationship; (3) that the interference was both intentional and improper in motive and means; and (4) that the interference harmed plaintiff. *See Blackstone v. Cashman*, 860 N.E.2d 7, 12-13 (Mass. 2007). "[I]mproper in motive and means" requires a "spiteful, malignant purpose." *Shea v. Emmanuel College*, 682 N.E.2d 1348, 1351 (Mass. 1997). "Pursuit of a legitimate business interest, without more, fails to qualify as an improper means or motive[.]" *Synergistics Tech., Inc. v. Putnam Investments, LLC*, 910 N.E.2d 388, 391 (Mass. App. Ct. 2009).

The relationship in which Uber allegedly interfered is "between plaintiffs and cab drivers." Dkt. No. 1-1 at ¶¶ 77-78.[5] But the Complaint does not allege that Uber specifically intended to disrupt any such relationship or that Uber acted with a "spiteful, malignant purpose." *Shea*, 682 N.E.2d at 1351. Nor does the Complaint allege any particular harm to Plaintiffs beyond a conclusory statement that harm exists. *See* Dkt. No. 1-1 at ¶ 78; *Iqbal*, 556 U.S. at 678 (rejecting "a formulaic recitation of the elements of a cause of action"). The absence of these allegations confirms that they lack any basis. This Court should therefore dismiss Count VI.

## V. PLAINTIFFS FAIL TO STATE A RICO CLAIM (COUNTS VII-IX)

This Court should dismiss Plaintiffs' Racketeer Influenced and Corrupt Organizations Act (RICO) claims. Plaintiffs fail the heightened RICO pleading standard, identify no predicate wire fraud, and cannot establish the requisite elements of each specific RICO claim.

---

[5] Although not cited in Count VI, Plaintiffs claim that Uber interferes with "exclusive contractual agreement[s]" between Boston Cab and a credit card processor. Dkt. No. 1-1 at ¶¶ 52-54. Even if the Court reads this allegation into Count VI, the Court should still dismiss because Plaintiffs fail to show that Uber knew of and intended to disrupt these agreements.

## A.      Plaintiffs Fail to Satisfy the Heightened Pleading Standard for RICO Claims

This Court must hold Plaintiffs' RICO claims to a heightened pleading standard.  "[T]o avert dismissal under Rule 12(b)(6), a civil RICO complaint must, at a bare minimum, state facts sufficient to portray (i) specific instances of racketeering activity within the reach of the RICO statute and (ii) a causal nexus between that activity and the harm alleged."  *Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 44 (1st Cir. 1991).  In particular, a plaintiff must plead sufficient facts to support a claim that a defendant committed: (1) the underlying predicate acts; (2) constituting a pattern of racketeering; and (3) thereby proximately causing harm to the plaintiff.  *See Sys. Mgmt., Inc. v. Loiselle*, 91 F. Supp. 2d 401, 408 (D. Mass. 2000).

Plaintiffs do not meet this pleading standard.  Plaintiffs' claim that "fraudulent representations have been transmitted to Boston users of the Uber taxi transportation system thousands of times over a period in excess of five months" contains no support, and far from identifies any specific instance of supposed racketeering.  And Plaintiffs' general assertion that "[t]he plaintiffs are informed, and believe, that Uber uses some of [its] income . . . in its ongoing operation of the Uber transportation system," which allegedly causes general harm to Plaintiffs, falls well short of establishing a "causal nexus" between the original alleged fraud and any harm.

This Court should therefore dismiss Counts VII-IX as insufficiently pled.

## B.      Plaintiffs Fail to Establish Any Predicate Wire Fraud

Plaintiffs premise their RICO claims on an alleged violation of the Wire Fraud statute, 18 U.S.C. § 1343.  *See* Dkt. No. 1-1 at ¶¶ 80, 86, 91.  "Where the predicate acts supporting a RICO claim sound in fraud, the plaintiff must assert all elements of his RICO claim according to the heightened pleading requirement of Fed. R. Civ. P. 9(b)."  *Loiselle*, 91 F. Supp. 2d at 408.  "Mail or wire fraud requires proof of (1) a scheme to defraud based on false pretenses; (2) the defendant's knowing and willing participation in the scheme with the specific intent to defraud;

and (3) the use of interstate mail or wire communications in furtherance of the scheme."

*Sanchez v. Triple-S Mgmt., Corp.*, 492 F.3d 1, 9-10 (1st Cir. 2007). Plaintiffs cannot show that

Uber has engaged in a scheme to defraud or that Uber has a specific intent to do so. Plaintiffs

contend that Uber commits wire fraud by suggesting a relationship between Uber and Plaintiffs

and by misrepresenting its pricing. *See* Dkt. No. 1-1 at ¶ 80. Neither claim passes muster.

First, Uber expressly disclaims, rather than tacitly suggests, any affiliation between Uber

and Plaintiffs. A User must agree to Uber's Terms and Conditions before using the App,

including that "THE COMPANY DOES NOT PROVIDE TRANSPORTATION SERVICES,

AND THE COMPANY IS NOT A TRANSPORTATION CARRIER." Exh. A at 1 (emphasis in

original). The sign-up screen also states: "Uber is a request tool not a transportation carrier."

Exh. B at 2. Uber cannot have created a scheme to suggest an affiliation that Uber expressly and

repeatedly disclaims.

Second, Plaintiffs' claim that Uber somehow misrepresents its fares conflicts with

Plaintiffs' parallel claim that "Uber makes no pretense of obeying these fare limits, charging a

flat rate plus additional charges per-mile or per-minute, depending on the car's speed" and that

"Uber claims that its fee is a mere $1 per taxi trip, and that drivers receive the full 20% gratuity."

Dkt No. 1-1 at ¶ 38. Uber cannot simultaneously disclose and conceal its pricing formula.

Third, Plaintiffs allege no specific intent by Uber to defraud. Plaintiffs' claims, taken at

face value, attempt to show omissions in disclosure. But "[a] defendant's failure to disclose

information, without more, cannot make out a violation of the mail and wire fraud statutes."

*Sanchez v. Triple-S Mgmt., Corp.*, 492 F.3d 1, 10 (1st Cir. 2007). Absent specific intent,

Plaintiffs' RICO claims must be dismissed as lacking a predicate showing of wire fraud.

**C.     Plaintiffs Fail to State a Claim under 18 U.S.C. § 1962 (Counts VII-IX)**

Plaintiffs also fail to state a RICO claim under 18 U.S.C. §§ 1962(a)-(c).  In addition to their failure to meet the heightened pleading standard of Fed. R. Civ. P. 9(b) and their failure to establish any predicate fraud, Plaintiffs cannot show that the supposed RICO violations caused any damages.  Plaintiffs fail to state that any alleged harm resulted directly from Uber's alleged use or investment of funds derived from wire fraud (Count VII), Uber's alleged acquisition or maintenance of any interest in or control of an enterprise (Count VIII), or Uber's alleged conduct or participation in an enterprise's affairs (Count IX).

Under § 1962(a), Plaintiffs allege that profits from the predicate acts are reinvested in the RICO enterprise – Uber's general business – to enable more unlawful profits, thereby harming Plaintiffs.  Under § 1962(b), Plaintiffs allege a new RICO enterprise – Boston's seven radio associations and their members – and assert without any support that Uber has assumed "increasing control" of these associations and their members, thereby increasing market share and making more unlawful profits through wire fraud.  Under § 1962(c), Plaintiffs allege without support that Uber somehow participates in the conduct of the affairs of "the operations of approved Boston Radio Associations and their medallion-owning members" through its wire fraud activities.  Even taking these assertions as true, Plaintiffs fail to allege a harm independent from the alleged wire fraud activity underlying the action.

Plaintiffs must link the alleged harm with the proscribed RICO conduct, not merely underlying racketeering or fraud.  *See, e.g.*, *Compagnie De Reassurance D'Ile De France v. New England Reinsurance,* 57 F.3d 56, 91-92 (1st Cir. 1995) (citing *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1188 (3d Cir. 1993)) (holding that, under § 1962(a), "the plaintiff must allege an injury resulting from the investment of racketeering income distinct from an injury

caused by the predicate acts themselves" and, "[u]nder § 1962(b), the plaintiffs had to show that they were harmed by reason of . . . acquisition or maintenance of control of an enterprise through a pattern of racketeering activity."); *see also Danielsen v. Burnside-Ott Aviation Training Ctr., Inc.*, 941 F.2d 1220, 1231 (D.C. Cir. 1991) ("plaintiffs must allege an 'acquisition' injury, analogous to the 'use or investment injury' required under § 1962(a) to show injury by reason of a § 1962(b) violation"). Plaintiffs cannot allege injury beyond the underlying alleged fraud.

Plaintiffs' generalized claims cannot support its RICO claims. This Court should therefore dismiss Counts VII-IX.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court dismiss all claims brought by Plaintiffs, without leave to amend.

Dated: April 10, 2013

Respectfully submitted,
UBER TECHNOLOGIES, INC.,

By its counsel,

/s/ Michael Mankes
Michael Mankes (BBO #662127)
LITTLER MENDELSON, P.C.
One International Place, Suite 2700
Boston, MA 02110
Tel: (617) 378-6000
Fax: (617) 737-0052
Email: mmankes@littler.com

Of Counsel:

Stephen A. Swedlow
Andrew H. Schapiro
QUINN EMANUEL URQUHART & SULLIVAN, LLP
500 West Madison St., Suite 2450
Chicago, IL 60661
Tel.: (312) 705-7400
Fax: (312) 705-7401
Email: stephenswedlow@quinnemanuel.com
        andrewschapiro@quinnemanuel.com

John B. Quinn
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017
Tel.: (213) 443-3000
Fax: (213) 443-3100
Email: johnquinn@quinnemanuel.com

Patrick A. Fitch (BBO #672797)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
1299 Pennsylvania Ave. NW, Suite 825
Washington, DC 20004
Tel.: (202) 538-8000
Fax: (202) 538-8100
Email: patrickfitch@quinnemanuel.com

## <u>CERTIFICATE OF SERVICE</u>

I, Michael Mankes, hereby certify that on April 10, 2013 the document filed through the

ECF system will be sent electronically to the registered participants as identified on the Notice of

Electronic Filing.  Paper copies will be sent by First Class Mail to those not registered.


*/s/ Michael Mankes*_____
Michael Mankes