United States District Court
District of Massachusetts

| | |
|---|---|
| BOSTON CAB DISPATCH, INC. and EJT MANAGEMENT, INC.,<br><br>　　　　Plaintiffs,<br><br>　　　　v.<br><br>UBER TECHNOLOGIES, INC.,<br><br>　　　　Defendant. | Civil Action No.<br>13-10769-NMG |

## MEMORANDUM & ORDER

**GORTON, J.**

Plaintiffs Boston Cab Dispatch, Inc. ("Boston Cab") and EJT Management, Inc. ("EJT") allege that defendant Uber Technologies, Inc. ("Uber") violates various federal and state false advertising and unfair competition laws and Boston taxicab ordinances by providing a private car service that allows users to call taxicabs associated with Boston Cab and other dispatch services without complying with Boston taxicab regulations.

Plaintiffs' complaint asserts the following causes of action: (1) violation of § 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B) (Count I); (2) violation of § 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A) (Count II); (3) violation of M.G.L. c. 93A, § 11 based on Uber's allegedly unfair and deceptive acts and practices (Count III); (4) violation of c. 93A, § 11 based on Uber's unfair competition

-1-

(Count IV); (5) unfair competition under Massachusetts common law (Count V); (6) interference with contractual relationships (Count VI); and (7) various violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(a-c) (Counts VII, VIII and IX).

In April, 2013, Uber moved to dismiss the complaint in its entirety. That motion was referred to Magistrate Judge Marianne Bowler for a Report and Recommendation ("R&R"). Judge Bowler's 96-page R&R recommends (1) dismissing Count I with prejudice, (2) denying the motion to dismiss with respect to Counts II through V and (3) dismissing Counts VI through IX without prejudice. Uber timely objected to Judge Bowler's recommendations with respect to Counts II through V. Plaintiffs have not filed an objection.

For the reasons that follow, the Court will sustain Uber's objections with respect to Counts II and III, reject the magistrate judge's recommendations with respect to those counts and dismiss Counts II and III with prejudice. It will overrule Uber's objections with respect to Counts IV and V, however, and accept and adopt the magistrate judge's recommendations with respect to Count I and Counts IV through IX.

I.  **Background**

The subject dispute arose after Uber entered the market for private transportation services in Boston. The crux of

plaintiffs' complaint is that Uber has gained an unfair competitive advantage over traditional taxicab dispatch services and license-holders because it avoids the costs and burdens of complying with extensive regulations designed to ensure that residents of Boston have access to fairly priced and safe transportation options throughout the city and yet reaps the benefits of others' compliance with those regulations.

The main source of regulation of the Boston taxicab industry is the Police Commissioner for the City of Boston ("the Commissioner"), who is authorized by statute to regulate the taxi business in Boston. In exercising that authority, the Commissioner requires anyone who drives or is "in charge of" a "hackney carriage" (i.e. taxicab) to possess a license known as a "taxicab medallion". Applicants for taxicab medallions must satisfy certain criteria with respect to driving and criminal history. In 2008, the Commissioner issued a comprehensive set of regulations as Boston Police Department Rule 403 ("Rule 403"). That rule requires all taxicab operators to, <u>inter alia</u>, possess medallions, maintain a properly equipped and functioning taxicab, refrain from cell phone use while operating a taxicab and belong to an approved dispatch service or "radio association".

Pursuant to Rule 403, radio associations are required to provide 24-hour dispatch capability, two-way radio service and

discount reimbursements for the elderly. They must also keep records of their dispatch services and, specifically, where each taxicab is dispatched at any given time. Moreover, each radio association maintains specific colors and "markings" approved by the Inspector of Carriages and taxicab operators must paint their taxicabs in the colors and markings of the association to which they belong.

Plaintiff Boston Cab is an approved radio association under Rule 403. It has contracted with the owners of 500 medallions (i.e. 500 licensed taxicab operators) who pay weekly membership fees to Boston Cab and paint their taxicabs with Boston Cab's colors and markings in exchange for Boston Cab's dispatching services.

Plaintiff EJT states that it has

> contracted with the owners of 370 Boston medallions to manage all aspects of the ownership, licensing and leasing of the owners' medallions and the taxis bearing these medallions.

EJT also asserts that it has the authority to seek the protection of those 370 taxicab owners/medallion holders' rights against all forms of unfair competition and trademark infringement.

Defendant Uber provides a tool for requesting private vehicles-for-hire to users who download Uber's free "smart phone application" ("the Uber app"). Users who open the Uber app on

their mobile phones are shown a map of their location or designated pick-up point and the available Uber-affiliated vehicles in that vicinity. The user can select a type of car based on price and the number of seats they need. At the time the motion to dismiss was filed, Uber offered three kinds of vehicles-for-hire: 1) "Uber Black Cars", which are unmarked four-seat sedans, 2) "Uber SUVs", which are unmarked SUVs that seat six passengers and 3) "Uber Taxis", which are vehicles operated by Boston taxicab drivers.[1]

Uber requires all drivers of Uber-affiliated vehicles to carry mobile telephones. They must respond to assignments generated by the Uber computer system "within seconds" or they will lose the job. The fare for each ride arranged through the Uber app is charged automatically to the customer's preauthorized credit card and therefore Uber-affiliated drivers cannot accept cash or other credit cards.

Uber does not own any taxicabs or taxicab medallions. Instead, taxicab drivers who are subject to Rule 403, own or lease medallions and belong to radio associations such as Boston Cab have agreed to be available for hire through Uber while they are working shifts and subject to dispatch by their radio associations. Their fares are calculated based on the flat rate

___

[1] Since the motion to dismiss was filed, Uber added a fourth option, "UberX", which are privately-owned vehicles that cost less to hire than Uber Black Cars or Uber SUVs.

applicable to all Boston taxicab drivers.  Uber adds a $1 "fee" and a 20% "gratuity" to the flat rate and therefore the final charge exceeds the maximum that taxicabs are permitted to charge under Rule 403.  While Uber's website represents that the 20% gratuity is "for the driver", drivers in fact only receive a 10% gratuity and Uber retains the other 10%.

Uber Black Cars and Uber SUVS, in contrast to Uber Taxis, do not comply with Rule 403 regulations with respect to, <u>inter alia</u>, 1) membership in approved radio associations or dispatch services, 2) regular inspections, 3) partitions between drivers and passengers, 4) panic buttons and GPS tracking to allow customers to alert police when they are in danger, 5) criminal background checks of drivers, 6) non-discrimination with respect to passengers with handicaps and 7) use of mobile telephones.

There is no evidence in the Fed. R. Civ. P. 12(b)(6) record that Boston Cab has suffered any harm as a result of members of its association picking up passengers who request a vehicle through the Uber app rather than through Boston Cab's dispatch service or that EJT has lost business as a result of Uber.  In plaintiffs' opposing memorandum, however, they contend that

> By falsely portraying taxis, including the plaintiffs'
> 500 cabs, as one choice among several Uber-affiliated
> forms of transportation that appear on a smartphone
> screen, Uber diverts fares that would go to licensed
> Boston taxis if Uber did not falsely claim taxis were
> part of its affiliated businesses.  This diversion of
> business has already caused a decrease in the demand

-6-

for the plaintiffs' cabs, a diminution in the number
of cabs leased, and a loss of revenue.

## II. Report and Recommendation on the Motion to Dismiss

Judge Bowler's R&R recommends that this Court (1) dismiss Count I with prejudice, (2) deny the motion to dismiss with respect to Counts II through V and (3) dismiss Counts VI through IX without prejudice. Uber timely objected to Judge Bowler's R&R with respect to Counts II through V. Plaintiffs have not objected to any recommendation made in the R&R.

When a district court refers a dispositive motion to a magistrate judge for a recommended disposition, it must "determine de novo any part of the magistrate judge's disposition that has been properly objected to". Fed. R. Civ. P. 72(b)(3). Thus, the Court reviews de novo the magistrate judge's recommendations with respect to Counts II through V, seriatim.

### A. Legal Standard

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). In considering the merits of a motion to dismiss, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. Langadinos v. Am. Airlines,

-7-

Inc., 199 F.3d 68, 69 (1st Cir. 2000). Yet "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice to state a cause of action. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Accordingly, a complaint does not state a claim for relief where the well-pled facts fail to warrant an inference of anything more than the mere possibility of misconduct. Id. at 679.

**B.   False association under the Lanham Act (Count II)**

Plaintiffs allege in Count II of their complaint that Uber violates § 43(a)(1)(A) of the Lanham Act by misrepresenting that it is affiliated with Boston Cab. Section 43(a)(1)(A) provides, in relevant part, that

> Any person who, on or in connection with any goods or services ... uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
>
> > (A) is likely to cause confusion, or to cause mistake, or to deceive <u>as to the affiliation, connection, or association of such person with another person</u>, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, ...
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1)(A) (emphasis added). To succeed on such a claim, plaintiffs must prove each of the following elements:

-8-

>     (1) [d]efendant[] used a designation (any word, term, name, device, or any combination thereof); (2) the use was in interstate commerce; (3) the use was in connection with goods or services; (4) the designation or false designation is likely to cause confusion, mistake, or deception as to (a) the affiliation, connection, or association of defendant with another person, or (b) as to the origin, sponsorship, or approval of defendant's goods, services, or commercial activities by another person; and (5) plaintiff[s] ha[ve] been or [are] likely to be damaged by these acts.

Brown v. Armstrong, 957 F. Supp. 1293, 1300 (D. Mass. 1997) aff'd, 129 F.3d 1252 (1st Cir. 1997).

Uber objects to the magistrate judge's report that 1) Uber "uses" Boston Cab's colors and markings in violation of the Lanham Act and 2) plaintiffs have sufficiently pled that they are likely to be damaged or have been damaged by said use.

The Court need not address Uber's first objection because it finds, contrary to the magistrate judge's finding, that plaintiffs have not carried their burden of pleading damages so as to survive Uber's Fed. R. Civ. P. 12(b)(6) motion. The magistrate judge identified three possible sources of injury to plaintiffs but each of the potential harms lacks a causal connection to the alleged use of Boston Cab's color and markings.

First, the magistrate judge reasoned that plaintiffs could suffer damage to their reputation and goodwill because Uber Black Cars and Uber SUVs lack the safety features mandated by

-9-

Rule 403, such as a panic button or GPS.  Uber objects and points out that the false-association claim is based entirely on Uber's alleged use of taxicab colors and markings and has nothing to do with the other Uber options.  This Court agrees that the complaint does not claim a connection between the alleged use of the Boston Cab colors and markings and the lack of safety features in Uber Black Cars or Uber SUVs. See Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave., 284 F.3d 302, 318 & n.16 (1st Cir. 2002) (requiring causal connection between alleged violation and harm to prove false advertising claim under § 43(a) of Lanham Act).  Nor can any reasonable inference be drawn that a consumer would hold the lack of safety features in Uber Black Cars or Uber SUVs against plaintiffs, resulting in harm to their reputations or goodwill. Beacon Mut. Ins. Co. v. OneBeacon Ins. Grp., 376 F.3d 8, 15-16 (1st Cir. 2004) (explaining that harm to goodwill or reputation suffices under § 43(a) of the Lanham Act).

Second, the magistrate judge reasoned that plaintiffs could be harmed because Rule 403 forbids mobile phone use by taxi drivers and yet drivers who contract with Uber, including those who use the Boston Cab colors and markings, are required to use mobile telephones to communicate with Uber and Uber customers. Accepting, for the purpose of a motion to dismiss, that driver cell phone use increases the potential for accidents and

therefore risk to passengers, plaintiffs do not allege any facts that would support the conclusion that plaintiffs are harmed by that risk as a result of consumers possibly mistaking the relationship between plaintiffs and Uber.  Even if Uber's service resulted in an increase in accidents involving taxis bearing the Boston Cab markings, any harm to Boston Cab's reputation would not be the result of customer confusion about the relationship between Uber and Boston Cab. See Cashmere & Camel Hair Mfrs. Inst., 284 F.3d at 318 & n.16.

Finally, the magistrate judge explained that plaintiffs alleged that they are harmed by lost revenues due to Uber offering Uber Black Cars and Uber SUVs as an alternative to taxicabs.  Uber objects that the entry of Uber SUVs and Uber Black Cars into the market has nothing to do with any alleged confusion about the relationship between Uber and Boston Cab and therefore, any harm due to those new alternatives lacks the requisite causal connection to Uber's alleged use of Boston Cab's marks.  This Court concurs and finds that this allegation of plaintiffs also fails to satisfy the pleading requirements with respect to harm.

Because the Court finds that plaintiffs have not adequately pled damages under the Lanham Act, it declines to address Uber's other objections to the recommendation with respect to Count II. Count II will be dismissed with prejudice.

**C. Violation of Chapter 93A based on unfair and deceptive acts (Count III)**

Count III of plaintiffs' complaint alleges that Uber has engaged in a series of false representations that constitute unfair and deceptive acts in commerce. The magistrate judge recommends denial of defendant's motion to dismiss. The Court agrees with Uber that Count III fails to meet the pleading standards and should be dismissed.

Chapter 93A proscribes those engaged in trade or commerce from employing "unfair methods of competition and unfair or deceptive acts or practices" and authorizes businesses to sue one another for engaging in such practices. M.G.L. c. 93A, §§ 2, 11. Whether a particular set of circumstances is unfair or deceptive under Chapter 93A is a question of fact. Incase, Inc. v. Timex Corp., 421 F. Supp. 2d 226, 239 (D. Mass. 2006). In the context of disputes among businesses, where both parties are sophisticated commercial players, the "objectionable conduct must attain a level of rascality that would raise an eyebrow to the rough and tumble of the world of commerce." Vision Graphics v. E.I. Du Pont de Nemours, 41 F. Supp. 2d 93, 101 (D. Mass. 1999) (quoting Levings v. Forbes & Wallace, Inc., 396 N.E.2d 149, 153 (Mass. App. Ct. 1979) (Kass, J.)). Yet even under the heightened standard governing business disputes,

> misrepresentations may be so seriously deceptive and harmful as to permit some recovery for the injury

really caused by them.... Business strategy 'in the
rough and tumble of the world of commerce' should not
use conscious misrepresentation as a competitive
weapon.

Zayre Corp. v. Computer Sys. of Am., Inc., 511 N.E.2d 23, 30 n.23 (Mass. App. Ct. 1987).

Count III alleges that the following four misrepresentations of the defendant Uber give rise to a claim under Chapter 93A:

- a) that it is affiliated with medallion owners and radio associations;
- b) that it only collects a $1 fee and pays the full 20% "gratuity" to taxi drivers;
- c) that its service is lawful under Boston Taxi Rules; and
- d) that its black cars, SUVs and UberX vehicles do not need to be licensed and regulated as taxis in Boston.

Alleged misrepresentations (a) and (b) fail to meet the pleading requirements for the reasons stated above and by the magistrate judge in her R&R. The former rests upon the same theory as plaintiffs' false association claim under the Lanham Act but, as this Court explained above, plaintiffs have not met their burden of pleading injury as both the Lanham Act and Chapter 93A, § 11 require. See Frullo v. Landenberger, 814 N.E.2d 1105, 1113 (Mass. App. Ct. 2004) ("[T]he unfair or deceptive act or practice must be shown to have caused the loss of money or property that § 11 makes actionable.").

Similarly, the magistrate judge found that plaintiffs have not pled a cognizable injury caused by misrepresentation (b) in recommending dismissal of Count I, plaintiffs' misrepresentation claim arising under the Lanham Act.

With respect to alleged misrepresentations (c) and (d), Uber correctly notes that, elsewhere in her R&R, the magistrate judge explained that

> [t]he complaint does not identify a representation in which Uber states explicitly or conveys by necessary implication that "Uber assigned taxis are operating lawfully" ....

The Court agrees with the magistrate judge that Uber has not made such explicit representations and also notes that plaintiffs have alleged no facts to support their allegations with respect to either (c) or (d). Conclusory allegations such as these, unsupported by facts, will not survive a motion to dismiss. Iqbal, 556 U.S. at 678.

### D. Violation of Chapter 93A based on unfair competition (Count IV)

Count IV of the complaint alleges that Uber unfairly competes with plaintiffs, in violation of Chapter 93A, by 1) "operating" its service without incurring the expense of compliance with Massachusetts law and Boston ordinances and 2) diverting revenues for credit card processing that the plaintiffs are contractually obligated to pay to its credit card processor. The magistrate judge recommended dismissing the

second part of the claim but allowing the first to survive. The Court agrees that plaintiffs have sufficiently stated such a claim.

The Court finds Uber's objection to the magistrate judge's reasoning unconvincing. Uber claimed in its memoranda in support of its motion to dismiss that it could not be held liable under Chapter 93A because it does not own any cars, medallions, or radio associations and does not employ drivers. The magistrate judge correctly found that Uber's argument was based on an unduly narrow conception of the term "operating". The Court agrees with the magistrate judge that there is sufficient evidence that Uber exercises control over (or is "in charge of") vehicles-for-hire that compete with plaintiffs in the private transportation business.

Uber's other objections require only brief examination. The Court finds no fault with the finding that plaintiffs' Chapter 93A claim is not barred by regulations that, according to Uber, occupy the field. Moreover, it disagrees with Uber that plaintiffs have failed to state a claim against Uber because any unlawful conduct is attributable only to drivers and not Uber in light of the fact that Uber sets policies that those drivers follow, such as the use of mobile telephones.

### E. Common law unfair competition claim (Count V)

For similar reasons, the Court will accept and adopt the magistrate judge's recommendation to deny the motion to dismiss Count V, which alleges unfair competition in violation of Massachusetts common law.

In its memoranda submitted in support of its motion to dismiss, Uber rests on the argument that plaintiffs' common law claim was derivative of the claims set out in Counts I through IV and therefore should fail because those claims fail. The Court has found that plaintiffs stated a claim with respect to Count IV and therefore that argument is unavailing.

Now that the magistrate judge has recommended denying the motion to dismiss Count V, Uber argues that her reasoning with respect to Count V is inconsistent with her reasoning with respect to Count II. The Court finds that argument irrelevant because plaintiffs' common law unfair competition claim closely tracks Count IV, not Count II, and the magistrate judge found only that plaintiffs did not assert a "palming off" claim with respect to Count II.

# ORDER

In accordance with the foregoing,

1) Defendant's objections to Magistrate Judge Bowler's Report and Recommendation ("the R&R") (Docket No. 42) are, with respect to Counts II and III, **SUSTAINED,** but are otherwise **OVERRULED,** and

2) Magistrate Judge Bowler's R&R (Docket No. 41) pertaining to defendant's motion to dismiss for failure to state a claim (Docket No. 5) is, with respect to Counts I, IV, V, VI, VII, VIII and IX, **ACCEPTED and ADOPTED,** but is, with respect to Counts II and III, **REJECTED.**

**So ordered.**

          /s/ Nathaniel M. Gorton
          Nathaniel M. Gorton
          United States District Judge

Dated March 27, 2014