**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

Boston Cab Dispatch, Inc., and EJT
Management, Inc.,

      Plaintiffs,

    v.

Uber Technologies, Inc.,

      Defendant.

CIVIL ACTION NO. 13-CV-10769-NMG

Judge Nathaniel M. Gorton

**DEFENDANT UBER TECHNOLOGIES, INC.'S MEMORANDUM IN SUPPORT OF
ITS MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

# TABLE OF CONTENTS

I.   Plaintiffs Fail To State A Claim For Unfair Competition Under M.G.L. c. 93A § 11.................................................................................................................4

    A.   Plaintiffs Fail To Allege That Uber's Alleged Conduct Proximately Caused Their Alleged Injuries. ..........................................................................4

    B.   Plaintiffs Cannot Recast Their Failed Tortious Interference And False Association Claims To Expand The Scope Of Their Unfair Competition Claims. ...................................................................................................6

        1.   Plaintiffs' Relabeled Allegations Remain Deficient.....................................6

        2.   Plaintiffs Are Barred From Restating Insufficient Allegations. ..................8

    C.   Even If Claim Preclusion Does Not Apply To Plaintiffs' Failed Tortious Interference And False Association Claims, Those Allegations Cannot Support Plaintiffs' Unfair Competition Claims. ........................................9

    D.   Plaintiffs' Allegations That Uber Allegedly Misrepresents Insurance Coverage Applicable To uberX Trips Cannot Support Plaintiffs' Unfair Competition Claims. ........................................................................10

    E.   Plaintiffs' Claims That Depend On The Legal Classification Of uberX-, uberBLACK-, And uberSUV-Requested Vehicles Should Be Barred.................11

II.  Plaintiffs Fail To State A Claim Under Massachusetts Common Law For Unfair Competition..................................................................................................13

III. Plaintiffs Fail To State Claims Under The Racketeer Influenced And Corrupt Organizations Act ("RICO")...............................................................................13

    A.   Even With Plaintiffs' Additional Allegations, Plaintiffs Fail To Satisfy Rule 9(b) Of The Federal Rules Of Civil Procedure. ............................................13

    B.   Plaintiffs Fail To Show That Uber's Alleged RICO Violations Proximately Caused Them Injury. ......................................................................15

    C.   RICO Does Not Apply To Ordinary Business Disputes.........................................16

# TABLE OF AUTHORITIES

**Page**

## CASES

*Airframe Sys., Inc. v. Raytheon Co.*, 601 F.3d 9 (1st Cir. 2010) ................................................... 8

*Andrew Robinson Int'l, Inc. v. Hartford Fire Ins. Co.*, 547 F.3d 48 (1st Cir. 2008)...................... 9

*Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006)......................................................... 16, 17

*Canal Electric Co. v. Westinghouse Elec. Corp.*, 756 F. Supp. 620 (D. Mass. 1990)................... 5

*Dial A Car, Inc. v. Transportation, Inc.*, 82 F.3d 484 (D.C. Cir. 1996) ...................................... 12

*Fassas v. First Bank & Trust Co. of Chelmsford*, 353 Mass. 628 (1968) ...................................... 9

*Frullo v. Landenberger*, 61 Mass. App. Ct. 814 (2004) ............................................................. 11

*George v. Nat'l Water Main Cleaning Co.*, 286 F.R.D. 168 (D. Mass. 2012) ............................ 16

*Hatch v. Trail King Indus., Inc.*, 699 F.3d 38 (1st Cir. 2012)................................................... 8, 9

*Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258 (1992).......................................................... 15

*IDT Telecom, Inc. v. Voice Distributors, Inc.*, No. 072465, 2008 WL 1800102 (Mass. Super. Apr. 11, 2008)..................................................................................................... 5, 6

*In re Sonus Networks, Inc, S'holder Derivative Litig.*, 499 F.3d 47 (1st Cir. 2007) ..................... 9

*Isaac v. Schwartz*, 706 F.2d 15 (1st Cir. 1983)............................................................................ 9

*Lily Transp. Corp. v. Royal Institutional Servs., Inc.*, 64 Mass. App. Ct. 179 (2005) ................ 10

*Maldonado v. Fontanes*, 568 F.3d 263 (1st Cir. 2009)............................................................... 12

*Manning v. Boston Med. Ctr. Corp.*, 725 F.3d 34 (1st Cir. 2013).......................................... 6, 13

*Mantz v. Wells Fargo Bank, N.A.*, No. 09-CV-12010-JLT, 2011 WL 196915 (D. Mass. Jan. 19, 2011)......................................................................................................... 9

*Manzo v. Uber Technologies, Inc.* No. 13 C 2407, 2014 WL 3495401 (N.D. Ill. Jul. 14, 2014) ............................................................................................................... 12, 13

*McGrath & Co., LLC v. PCM Consulting, Inc.*, No. CIV.A. 11-10930-DJC, 2012 WL 503629 (D. Mass. Feb. 15, 2012)........................................................................................ 13

*Nikitine v. Wilmington Trust Co.*, 715 F.3d 388 (1st Cir. 2013)................................................. 10

*Pembroke Country Club, Inc. v. Regency Savs. Bank, F.S.B.*, 62 Mass. App. Ct. 34, (2004).................................................................................................................................. 10

*Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985) ...................................................... 17

*Straumann Co. v. Lifecore Biomedical Inc.*, 278 F. Supp. 2d 130 (D. Mass. 2003) ................... 13

*Sys. Mgmt., Inc. v. Loiselle*, 303 F.3d 100 (1st Cir. 2002) ...................................................... 15

*Tiernan v. Blyth, Eastman, Dillon & Co.*, 719 F.2d 1 (1st Cir. 1983) ........................................ 10

## STATUTES

15 U.S.C. § 1125(a)(1)(A) ...................................................................................... 1

15 U.S.C. § 1125(a)(1)(B) ...................................................................................... 1

18 U.S.C. § 1961(5) ............................................................................................. 14

18 U.S.C. § 1962 ............................................................................................. 3, 13

M.G.L. c. 93A § 11 .................................................................................... passim

## RULES

Fed. R. Civ. P. 9(b) .......................................................................................... 2, 14

## TREATISES

*McCarthy on Trademark and Unfair Competition* at § 27:41 ...................................... 5

## INTRODUCTION

Plaintiffs Boston Cab Dispatch, Inc. ("Boston Cab") and EJT Management, Inc. ("EJT") are businesses that operate in the Boston taxi industry. Plaintiff EJT contracts with taxi license ("medallion") owners to manage the ownership, licensing, and leasing of the taxicabs that bear those medallions. Plaintiff Boston Cab is a licensed radio association in Boston that is the licensee of the trademarks and trade dress associated with the Boston Cab taxi service. Defendant Uber Technologies, Inc. ("Uber") is a technology company that provides a smartphone application that allows members of the public in Boston (and in over one hundred other cities around the world) to request taxi, limousine (also called livery), and ridesharing transportation with just a few taps on their smartphone screens.

This is Plaintiffs' second attempt at pleading their claims, and the Amended Complaint fares no better than the original. In fact, Plaintiffs blatantly attempt to avoid the Court's dismissal of Counts I, II, and III *with prejudice* by repackaging those very same allegations under new headings. It cannot be that Plaintiffs can avoid the dismissal of their claims with prejudice by simply copying and pasting the same allegations under new headings with nothing moer. What is particularly galling is that Plaintiffs failed to explain in their motion for leave to amend the complaint that they were repackaging the claims that were dismissed with prejudice under new headings. Dkt. No. 45. Instead, they represented to the Court that they were "simply updat[ing] the earlier allegations" with post-filing events and were "eliminat[ing] the original Counts I-III" that were dismissed with prejudice. *Id.* at 4. The Court should reject the Plaintiffs' attempt to undo its previous order and should dismiss those claims a second time.

In their original Complaint, Plaintiffs attempted to state claims under (1) section 43(a)(1)(B) of the Lanham Act based on Uber's alleged representation to consumers that Uber-assigned taxicabs in Boston operated legally (Count I); (2) section 43(1)(A) of the Lanham Act based on Uber's alleged false representation that it is affiliated with Boston Cab (Count II); (3) M.G.L. c. 93A § 11 ("c. 93A") for unfair or deceptive acts based on the same allegations as Counts I and II (Count III); (4) c. 93A for unfair competition based on Uber's alleged violation

of Boston's Hackney Carriage Rules ("Rule 403") (Count IV); (5) common-law unfair competition based on Uber's alleged violation of Rule 403 (Count V); (6) intentional interference with economic or advantageous relations based on Uber's alleged interference with contracts between Plaintiffs and credit card processors and between Plaintiffs and drivers (Count VI); and (7) Racketeer Influenced and Corrupt Organizations Act (RICO) violations based on Uber's alleged use of interstate wires to transmit false information regarding fares for taxi rides requested through Uber (Counts VII–IX).

In response to Uber's Motion to Dismiss the original Complaint, this Court dismissed most of Plaintiffs' causes of action. It dismissed Counts I–III with prejudice based on Plaintiffs' failure to allege false representations or harm caused by those alleged false representations. It also dismissed Count VI without prejudice because Plaintiffs failed to allege any harm to them as a result of Uber's alleged interference with the two types of contracts alleged, while Counts VII–IX were dismissed without prejudice because Plaintiffs failed to satisfy Rule 9(b) of the Federal Rules of Civil Procedure when alleging Uber's use of interstate wires to defraud users.

As discussed above, the Amended Complaint is largely an improper attempt to resurrect causes of action that this Court already dismissed with prejudice. But Plaintiffs cannot attempt to state new claims by merely restating the exact same allegations it originally used to support Counts I–III, with only a new label and no additional facts.

This Court also granted Plaintiffs the opportunity to correct the pleading deficiencies it identified for Counts VI–IX. But Plaintiffs made *no attempt* to correct the deficiencies identified with respect to Count VI. Instead, Plaintiffs again simply restate the exact same allegations with a new label and nothing more. With respect to Counts VII–IX in Plaintiffs' original Complaint, Plaintiffs' amendments fail to correct the deficiencies this Court identified and thus Plaintiffs again fail to satisfy Rule 9(b) of the Federal Rules of Civil Procedure.

## SUMMARY OF FACTUAL ALLEGATIONS

In their Amended Complaint, Plaintiffs allege that Uber unfairly competes against them by not complying with the local regulations that Plaintiffs themselves allegedly must comply

with. That is (and has been) Plaintiffs' primary complaint, and all their other allegations stem from it. Plaintiffs allege that all vehicles that Uber users request "must, therefore, be considered 'hackney carriages' under Boston's regulations." Am. Compl. ¶ 24. Based on that presumption, Plaintiffs accuse Uber of putting the safety of the Boston public at risk, *id.* ¶ 26–31, being discriminatory, *id.* ¶¶ 32–36, illegally overcharging customers, *id.* ¶¶ 37–42, deceptively representing the insurance coverage applicable to certain types of trips requested through Uber, *id.* ¶¶ 54–59, falsely claiming to be associated with Plaintiffs, *id.* ¶¶ 60–61, and preventing a credit card processor (that is not a party to this case) from collecting its fees pursuant to contracts it allegedly has with Plaintiffs, *id.* ¶¶ 62–66. Plaintiffs believe that that alleged conduct amounts to unfair competition under Massachusetts statutory (Count I) and common law (Count II), and violations of the Racketeer Influenced and Corrupt Organizations Act (RICO) (Counts III–V).

The Amended Complaint is largely identical in substance to Plaintiffs' original Complaint. In an apparent attempt to avoid the dismissal with prejudice of their false-affiliation claims, they have renamed a heading from the original complaint, which said, "Uber Falsely Claims To Be Affiliated With Boston Medallion Owners," to "Uber *Unfairly Competes* By Falsely Claiming To Be Affiliated With Boston Medallion Owners." *Compare* Compl. ¶¶ 49–50 *with* Am. Compl. ¶¶ 60–61 (emphasis added). The allegations themselves are identical. Plaintiffs also changed the heading, but not the substance, of the section previously entitled, "Uber Unlawfully Interferes With Contractual Relations Between Licensed Taxis and Service Providers," to "Uber *Unfairly Competes* By Interfering In Contractual Relations Between Licensed Taxis and Service Providers." *Compare* Compl. ¶¶ 51–54 *with* Am. Compl. ¶¶ 62–65 (emphasis added).

The only substantial differences in the Amended Complaint are that, in the Amended Complaint, Plaintiffs (1) include two specific instances of Uber's alleged transmissions of allegedly false information that serve as predicate acts for their RICO claims (Counts III–V), Am. Compl. ¶ 40, 75; (2) include allegations of Uber charging "illegal fares for [u]berX, black cars, and SUVs" through "surge pricing" in support of their statutory and common-law unfair

competition claims (Counts I–II), Am. Compl. ¶ 48; (3) include allegations of Uber making allegedly false or deceptive statements regarding the insurance coverage applicable to uberX trips in support of their statutory and common-law unfair competition claims (Counts I–II), Am. Compl. ¶¶ 54–59; and (4) include revised allegations of harm in the form of diverted revenues and reduced taxi medallion values for Counts I, II, IV, and V, Am. Compl. ¶¶ 69, 73, 85, 89.[1] The Amended Complaint includes no other substantial changes.

## ARGUMENT

### I.     Plaintiffs Fail To State A Claim For Unfair Competition Under M.G.L. c. 93A § 11.

In Count I, Plaintiffs allege a violation of c. 93A based on Uber's alleged unfair competition with Plaintiffs, in the form of Uber's alleged failure to comply with local regulations.  Am. Compl. ¶¶ 67–69.  This claim should be dismissed because Plaintiffs failed to plead facts showing Uber proximately caused them any injury, and because they have impermissibly shifted the claims that were dismissed with prejudice under the umbrella of unfair competition.

### A.     Plaintiffs Fail To Allege That Uber's Alleged Conduct Proximately Caused Their Alleged Injuries.

Plaintiffs conclusory allegation that "Uber's unlawful competition has caused harm to the plaintiffs by diverting revenues that would otherwise be paid to taxis and by reducing the value of taxi medallions," Am. Compl. ¶¶ 69, 73, cannot support an inference, let alone a conclusion, that Plaintiffs' alleged harm was *proximately* caused by Uber's alleged conduct, as is required under c. 93A.  Plaintiffs merely assume that all of their lost revenues went to Uber and that the alleged reduction in their taxi medallion values is solely due to Uber, but the Amended Complaint includes no factual allegations that support such inferences.

---

[1]    In Count III, Plaintiffs still only include a vague allegation of "economic injury," identical to what they stated in their original Complaint.

"[T]o recover under c. 93A, [a] plaintiff must establish that: (1) the defendant's wrongful conduct is the proximate cause of its injury; (2) plaintiffs have suffered tangible loss in the form of money or property; (3) such damages are not based on speculation but are calculable to a reasonable degree of certainty; and (4) such damages are not precluded by the 'pure economic loss' doctrine discussed in *Canal Electric Co. v. Westinghouse Elec. Corp.*, 756 F. Supp. 620, 630 (D. Mass. 1990)." *IDT Telecom, Inc. v. Voice Distributors, Inc.*, No. 072465, 2008 WL 1800102, at *1 (Mass. Super. Apr. 11, 2008).

The Amended Complaint includes numerous allegations of Uber's allegedly wrongful conduct, and in their prayers for relief, Plaintiffs baldly assert that that allegedly wrongful conduct "divert[s] revenues that would otherwise be paid to taxis and reduc[es] the value of taxi medallions," Am. Compl. ¶¶ 69–73. However, Plaintiffs make no attempt to plead a causal link between Uber's alleged conduct and their alleged harm. "[T]he causal relationship between [Uber's alleged conduct and Plaintiffs' harm] is too tenuous for c. 93A liability . . . ." *IDT Telecom*, 2008 WL 1800102, at *1–*2.

In particular, Plaintiffs make no attempt to explain why, given the presence of other taxicab companies in the market, any revenues allegedly obtained by Uber were at Plaintiffs' expense. Plaintiffs admit that they only represent a fraction of Boston's taxi industry. Am. Compl. ¶¶ 3, 11 (admitting that Plaintiff "EJT has contracted with the owners of 370 Boston medallions to manage all aspects of the ownership, licensing, and leasing of the owners' medallions and the taxis bearing these medallions," where "[a] taxicab cannot operate legally in Boston without one of the 1,825 city-issued taxi medallions"). Given that nearly 1,500 other medallions exist in Boston, "it is practically impossible for [Plaintiffs] to plead" that the alleged diversion of revenues from Plaintiffs is due to Uber's alleged conduct and not due to the conduct of the owners of the 1,500 other medallions. *See IDT Telecom*, 2008 WL 1800102, at *2 (quoting *McCarthy on Trademark and Unfair Competition* at § 27:41, 27). Plaintiffs similarly fail to explain why the alleged diversion in revenues from Plaintiff Boston Cab is due to Uber's

alleged conduct and not due to the conduct of the other six "approved radio associations," Am. Compl. ¶ 11.

Plaintiffs have further failed to plead any facts regarding their alleged lost revenues or the reduction in the value of their medallions. They allege simply that Uber harmed them "by diverting revenues that would otherwise be paid to taxis and by reducing the value of taxi medallions." Am. Compl. ¶ 69. There is no factual underpinning supporting these conclusory allegations. Without more, the Court is left with no way to determine whether their claims of injury are real or merely speculative. *Manning v. Boston Med. Ctr. Corp.*, 725 F.3d 34, 43 (1st Cir. 2013) ("conclusory allegations that merely parrot the relevant legal standard are disregarded").

Given that Plaintiffs have not even pled facts in their Amended Complaint to support a conclusion that Uber's alleged conduct proximately caused their alleged harm, this Court should dismiss Count I in its entirety. Furthermore, given that Plaintiffs have already had an opportunity to amend their allegations, Uber respectfully requests that this dismissal be without additional leave to amend.

**B.      Plaintiffs Cannot Recast Their Failed Tortious Interference And False Association Claims To Expand The Scope Of Their Unfair Competition Claims.**

Plaintiffs are barred from recasting their failed tortious interference and false association claims because mere recasting does nothing to change the sufficiency of the allegations and because the claims are barred under the doctrine of claim preclusion.

**1.      Plaintiffs' Relabeled Allegations Remain Deficient.**

In their original Complaint, Plaintiffs alleged that Uber falsely associated itself with Plaintiffs by contracting with drivers of Plaintiffs' taxicabs to allow Uber users to request those taxicabs through its application, Compl. ¶¶ 49–50, that Uber knowingly interfered with contracts between Plaintiffs and third-party taxi drivers by inducing those drivers to violate Boston taxi regulations, Compl. ¶ 14, and that Uber intentionally interfered with contracts between Plaintiffs

and a third-party payment processor by preventing that processor from collecting its fees under those contracts, Compl. ¶¶ 51–54.  This Court dismissed with prejudice Plaintiffs' false association claim under the Lanham Act and corresponding state law claim under c. 93A, holding that Plaintiffs could not "adequately ple[a]d damages" because "any harm to Boston Cab's reputation [from to Uber's allegedly illegal and unsafe operations] would not be the result of customer confusion about the relationship between Uber and Boston Cab."  Dkt. No. 43 at 11.

In an obvious attempt to circumvent that dismissal, Plaintiffs merely revised the heading above the original Complaint's paragraphs 49–50, to which the Amended Complaint's paragraphs 60–61 are identical, from "Uber Falsely Claims To Be Affiliated With Boston Medallion Owners" to "Uber Unfairly Competes By Falsely Claiming To Be Affiliated With Boston Medallion Owners."  But they made no attempt to address the defect in their original pleading, which is that they failed to adequately plead any damages from the alleged false affiliation.  The changed heading, of course, does nothing to remedy that fundamental defect.  For that reason alone, Plaintiffs' claims based on those allegations should be dismissed.

Plaintiffs attempt a similar sleight of hand with the dismissed tortious interference claim based on Uber's alleged interference with contracts between (1) Plaintiffs and a third-party payment processor and (2) Plaintiffs and third-party taxi drivers.  *See* Dkt. No. 41 at 85–91 (Magistrate's Report and Recommendation to dismiss the original Complaint's Count VI); *see also* Dkt. No. 43 at 17 (adopting Report and Recommendation with respect to the original Complaint's Count VI).  This Court dismissed those claims because Plaintiffs "fail[ed] to show any facts that [they] experienced harm as a result of Uber's interference with the contract between Boston Cab and CMT," Dkt. No. 41 at 88, and because "there [was] no indication that Boston Cab or EJT experience harm as a result of Uber's interference," *id.* at 90.  Rather than "seek[ing] leave to amend the complaint to set out facts to support a plausible entitlement to relief under Count VI," *id.* at 91, Plaintiffs revised the heading for the original Complaint's paragraphs 51–54, to which the Amended Complaint's paragraphs 62–65 are identical, from "Uber Unlawfully Interferes With Contractual Relations Between Licensed Taxis and Service

Providers" to "Uber Unfairly Competes By Interfering In Contractual Relations Between Licensed Taxis And Service Providers." Plaintiffs cannot resurrect that claim simply by changing the label on those allegations and adding nothing more. As above, they made no attempt to supplement those allegations and adequately plead damages, and for that reason alone, Plaintiffs' claims based on those allegations should be dismissed.

## 2. Plaintiffs Are Barred From Restating Insufficient Allegations.

"The three elements of claim preclusion are: '(1) a final judgment on the merits in an earlier proceeding, (2) sufficient identicality between the causes of action asserted in the earlier and later suits, and (3) sufficient identicality between the parties in the two actions.'" *Hatch v. Trail King Indus., Inc.*, 699 F.3d 38, 45 (1st Cir. 2012). "It is axiomatic that 'claim preclusion doctrine requires [a party] to live with [its strategic] choices.'" *Id.* (modification in original) (quoting *Airframe Sys., Inc. v. Raytheon Co.*, 601 F.3d 9, 11 (1st Cir. 2010)). "Those strategic choices include whether to attempt to amend a complaint . . . ." *Hatch*, 699 F.3d at 45. "[A] a party should be held to account not only for what he actually pleaded, but for what he could have pleaded . . . ." *In re Sonus Networks, Inc, S'holder Derivative Litig.*, 499 F.3d 47, 61 (1st Cir. 2007).

Here, the strategic choices Plaintiffs made with respect to their tortious interference claim are clear. This Court allowed Plaintiffs to "seek leave to amend the complaint to set out facts to support a plausible entitlement to relief under Count VI," Dkt. No. 41 at 91, but as shown above, Plaintiffs used the same allegations, did not set out any additional facts, and made the strategic choice not to attempt to amend their original Complaint with respect to Count VI. Thus, this Court's earlier dismissal operates as a final judgment on the merits. *See Hatch*, 699 F.3d at 45.

Plaintiffs' illusory "amendment" is insufficient to overcome claim preclusion. "The statement of a different form of liability is not a different cause of action, provided it grows out of the same transaction." *Andrew Robinson Int'l, Inc. v. Hartford Fire Ins. Co.*, 547 F.3d 48, 52 (1st Cir. 2008) (quoting *Fassas v. First Bank & Trust Co. of Chelmsford*, 353 Mass. 628, 629

(1968)); *see also Isaac v. Schwartz*, 706 F.2d 15, 17 (1st Cir. 1983) ("[N]ew legal theories,

embodied in different statutes and different common law doctrines, . . . cannot overcome res

judicata's bar . . . ."). Thus, the cause of action asserted in the first Complaint is sufficiently

identical to the cause of action asserted in the Amended Complaint. *See Hatch*, 699 F.3d at 45.

And finally, there is no dispute that the parties are identical in the first Complaint and the

Amended Complaint. *See id.* Therefore, all the elements of claim preclusion are satisfied and

this Court should bar Plaintiffs from repackaging their failed tortious interference claim in order

to assert it under the guise of their unfair competition claims.

The same is true for Plaintiffs' attempt to repackage their false association claim, which

this Court dismissed with prejudice. "[A] dismissal with prejudice constitutes an adjudication on

the merits as fully and completely as if the order had been entered after trial." *Mantz v. Wells

Fargo Bank, N.A.*, No. 09-CV-12010-JLT, 2011 WL 196915, at *3 (D. Mass. Jan. 19, 2011)

(internal quotation marks omitted). As with Plaintiffs' tortious interference claim, Plaintiffs

include no additional factual allegations and are doing nothing more than "scrambling to devise

new theories of liability based on the same facts pled in [their] original complaint." *Nikitine v.

Wilmington Trust Co.*, 715 F.3d 388, 391 (1st Cir. 2013) (quoting *Tiernan v. Blyth, Eastman,

Dillon & Co.*, 719 F.2d 1, 4 (1st Cir. 1983)) (internal quotation marks and modification omitted).

Therefore, this Court should bar Plaintiffs from repackaging their failed false association claim

in order to assert it under the guise of their unfair competition claims.

C.      **Even If Claim Preclusion Does Not Apply To Plaintiffs' Failed Tortious
        Interference And False Association Claims, Those Allegations Cannot
        Support Plaintiffs' Unfair Competition Claims.**

As shown above, Plaintiffs attempt to use c. 93A as a means to resurrect their dismissed

tortious interference and false association claims, providing no factual allegations beyond those

in the original Complaint. Regardless of whether Plaintiffs are precluded from doing so under

the doctrine of claim preclusion, the allegations underlying those claims cannot be used to

support claims under c. 93A. *See Lily Transp. Corp. v. Royal Institutional Servs., Inc.*, 64 Mass.

App. Ct. 179, 204 (2005) (citing, *inter alia*, *Pembroke Country Club, Inc. v. Regency Savs. Bank,*

*F.S.B.*, 62 Mass. App. Ct. 34, 40–41 (2004), and listing cases where c. 93A claims were held

insufficient because they were based on underlying claims that themselves were insufficient).

For example, in *Pembroke*, the court held that, where the claim under c. 93A was "wholly

derivative" of a tortious interference claim that itself was insufficient, "it [was] likewise

insufficient to establish an unfair method of competition or an unfair or deceptive act or

practice." 62 Mass. App. Ct. at 40–41. Therefore, because Plaintiffs' expanded unfair

competition claims are wholly derivative of insufficient tortious interference and false

association claims, the derivative unfair competition claims are also insufficient and should be

dismissed.

> **D. Plaintiffs' Allegations That Uber Allegedly Misrepresents Insurance Coverage Applicable To uberX Trips Cannot Support Plaintiffs' Unfair Competition Claims.**

Plaintiffs' new allegation that Uber allegedly misrepresents the insurance coverage

applicable to uberX trips cannot support Plaintiffs' unfair competition claims (Counts I and II)[2]

because Plaintiffs articulate no injury that is traceable to that alleged conduct. Citing an alleged

March 14, 2014 website posting, Plaintiffs claim that Uber represents "to Massachusetts's

customers that it provides $1 million in liability coverage." Am. Compl. ¶ 55. Plaintiffs do not

allege that that alleged representation is false, only that it is deceptive. *See* Am. Compl. ¶ 57–59

(alleging that "the $1 million representation is deceptive"). Plaintiffs similarly do not allege that

Uber makes any representations regarding the compliance of this alleged coverage with local

rules and regulations. *See id.* Indeed, Plaintiffs' own allegations indicate that "Uber does not

claim that its [u]berX cars are livery vehicles" that would be subject to such rules and

regulations. Am. Compl. ¶¶ 48.

---

[2] Plaintiffs do not allege facts to suggest, nor do they assert, that that new allegation has any relevance to their RICO claims. Am. Compl. ¶¶ 75, 82, 87 (referring only to so-called Uber-affiliated taxis and Boston taxi drivers).

As this Court noted in its Order on Uber's first Motion to Dismiss, c. 93A requires pleading injury. Dkt. No. 43 at 13. "[T]he unfair or deceptive act or practice must be shown to have caused the loss of money or property that § 11 makes actionable." *Id.* (quoting *Frullo v. Landenberger*, 61 Mass. App. Ct. 814, 823 (2004)). Plaintiffs make no such showing with respect to this alleged unfair or deceptive act or practice. *See* Am. Compl. ¶¶ 68–69, 71–73 (vaguely alleging injury due only to Uber's "unlawfully operating its taxi, black car, SUV, and [u]berX transportation service"). This Court declined to sustain allegations of misrepresentations in Plaintiffs' original Complaint for that reason, noting that Plaintiffs made "no reference to any diversion of sales, any lost customers, or any lessening of goodwill or harm to plaintiffs' reputation as a result of [Uber's alleged misrepresentation regarding gratuities]." Dkt. No. 41 at 37. The same result should follow here. How could a representation about Uber's insurance policies proximately cause any harm to Plaintiffs? The Amended Complaint must be able to answer this question in order to state a claim, but it is entirely unclear how this alleged representation would have any effect at all on Plaintiffs.

Because Plaintiffs have only attempted to plead an unfair or deceptive act or practice, but have failed to allege facts showing that that alleged practice caused them to lose money or property, their allegations that Uber allegedly misrepresents the insurance coverage applicable to uberX trips cannot form the basis of a claim under c. 93A.

**E.     Plaintiffs' Claims That Depend On The Legal Classification Of uberX-, uberBLACK-, And uberSUV-Requested Vehicles Should Be Barred.**

"Allegation[s] of law, not fact," are not assumed true for purposes of a motion to dismiss. *Manzo v. Uber Technologies, Inc.* No. 13 C 2407, 2014 WL 3495401, at *4 (N.D. Ill. Jul. 14, 2014). *See also Maldonado v. Fontanes*, 568 F.3d 263, 266 (1st Cir. 2009). Citing *Dial A Car, Inc. v. Transportation, Inc.*, 82 F.3d 484 (D.C. Cir. 1996), the court in *Manzo* "reject[ed the plaintiff]'s argument that Uber's illegal existence create[d] a claim under [Illinois consumer fraud and deceptive trade practices statutes]" and "dismisse[d] all claims premised on Uber's violation of local ordinances . . . ." 2014 WL 3495401, at *4. The court reasoned that the

plaintiffs' allegations that Uber had violated local ordinances were legal conclusions that the court did not need to accept as true for purposes of a motion to dismiss. *Id.* The court further stated that the plaintiffs could not use state consumers protections statutes to "interpret and enforce" local ordinances. *Id.* at *3 (quoting *Dial A Car*, 82 F.3d at 490). The same result should follow here.

Other than the allegations discussed *supra* in Section I.D, every one of Plaintiffs' allegations regarding uberX, uberBLACK, and uberSUV are founded on the *legal conclusion* that any vehicle requested through uberX, uberBLACK, or uberSUV is a "'hackney carriage[] under Boston's regulations, and cannot operate legally without a medallion and hackney-licensed driver." Am. Compl. ¶ 24. But this Court "need not accept as true legal conclusions from the complaint . . . ." *Maldonado*, 568 F.3d at 266. Plaintiffs' numerous other allegations regarding those vehicles depend on that legal conclusion, including the allegations that those vehicles (1) are unsafe because the drivers of those vehicles allegedly do not meet the licensing requirements applicable to taxicab drivers, Am. Compl. ¶¶ 26–31; (2) are discriminatory because they do not satisfy the provisions "that protect poor, disabled , and elderly riders against discrimination," [3] *id.* ¶¶ 32–36; and (3) violate "fare limits," *id.* ¶¶ 38, 42. *See also id.* ¶¶ 45, 47–53 (contending that uberX-, uberBLACK-, and uberSUV-requested vehicles should be legally classified as taxicabs). This Court should disregard the legal conclusion that uberX-, uberBLACK-, and uberSUV-requested vehicles are "hackney carriages" as defined by Boston regulations, and thus should disregard the allegations that are based on that premise as well. *See Manning*, 725 F.3d at 43; *see also Manzo*, 2014 WL 3495401, at *4. Therefore, Plaintiffs' claims that rely solely on application of Boston taxicab regulations to uberX-, uberBLACK-, and uberSUV-requested vehicles should be dismissed.

---

[3] Notably absent from the Amended Complaint are allegations that Plaintiffs themselves make any attempt to comply with such rules.

## II. Plaintiffs Fail To State A Claim Under Massachusetts Common Law For Unfair Competition.

Plaintiffs' claim for unfair competition is entirely derivative of their claim for unfair competition under c. 93A. In particular, the Amended Complaint includes no allegations specific to this claim, and the prayers for relief are identical for both claims. *Compare* Am. Compl. ¶¶ 68 – 69 *with id.* ¶¶ 71, 73. Therefore, Plaintiffs' claim under Massachusetts common law should be dismissed as well. *See Straumann Co. v. Lifecore Biomedical Inc.*, 278 F. Supp. 2d 130, 140 (D. Mass. 2003) ("The state law trademark and unfair competition claims are indistinguishable from the Lanham Act claim and will also be dismissed."); *McGrath & Co., LLC v. PCM Consulting, Inc.*, No. CIV.A. 11-10930-DJC, 2012 WL 503629, at *9 (D. Mass. Feb. 15, 2012) (disposing of the plaintiff's unfair competition claim in a manner identical to his c. 93A claim because "his unfair competition claim mirror[ed] the allegations that underpin[ned] the Lanham Act and Chapter 93A claims").

## III. Plaintiffs Fail To State Claims Under The Racketeer Influenced And Corrupt Organizations Act ("RICO")

### A. Even With Plaintiffs' Additional Allegations, Plaintiffs Fail To Satisfy Rule 9(b) Of The Federal Rules Of Civil Procedure.

Though Plaintiffs used the opportunity this Court afforded them to attempt to resolve the pleading deficiencies in their RICO claims, Plaintiffs failed.

As in their original Complaint, Plaintiffs assert claims under three RICO provisions, 18 U.S.C. § 1962(a)–(c), based on Uber's alleged wire fraud. Am. Compl. ¶¶ 39–41. That alleged wire fraud consists of alleged misrepresentations about the true recipient of the alleged 20% gratuity charged to users who request taxi transportation through Uber. *Id.*[4] This Court originally dismissed those claims based on Plaintiffs' failure to satisfy the particularity

---

[4] Plaintiffs' original Complaint also set forth Uber's alleged false association with Plaintiffs as a basis for the alleged wire fraud. Plaintiffs did not attempt to correct the pleading deficiencies with respect to those allegations. Therefore, Uber addresses only the allegations of wire fraud that consist of alleged misrepresentations about the 20% gratuity.

requirement of Rule 9(b) of the Federal Rules of Civil Procedure.  Dkt. No. 41 at 91–95.  In particular, "the specificity regarding the time and place of the use of interstate wire communications [was] absent" from Plaintiffs' original Complaint.  *Id.* at 93.  In response, Plaintiffs identified two individuals—Amanda Tetrault and Michael McLaughlin—who allegedly signed up for Uber on May 27, 2012 and December 29, 2012, respectively.  Am. Compl. ¶ 40.  Plaintiffs claim that "Uber's website automatically informed every one of its thousands of Massachusetts customers" received that allegedly false information from Uber.  *Id.*

But even with that additional information, the specificity this Court found lacking in Plaintiffs' original Complaint remains lacking in their Amended Complaint.  As this Court noted, an allegation of "[u]sing the internet to transmit [alleged] misrepresentations 'thousands of times' for 'a period in excess of five months' does not particularize the time and place of the use of interstate wire communications."  Dkt. No. 41 at 94.  Plaintiffs have only attempted to particularize two instances of Uber's alleged use of interstate wire communications.  Am. Compl. ¶ 40.  But even that attempt is futile.  Plaintiffs do not identify *when* Uber allegedly used interstate wires to transmit the allegedly false information to Tetrault and McLaughlin; they only identify when those two individuals signed up for Uber.  Therefore, Plaintiffs have failed to provide any specificity regarding the times and places of those two alleged interstate wire communications, and have failed to satisfy Rule 9(b) a second time.[5] Moreover, because this

---

[5]  Although Plaintiffs specified the sign up dates for Tetrault and McLaughlin, those dates cannot be the dates the alleged representations, and therefore the alleged wire fraud, occurred.  Tetrault's alleged sign-up date of May 27, 2012 is approximately three months before Uber allegedly even "began operation of Uber Taxi in Massachusetts in September, 2012."  Am. Compl. ¶ 40.  Uber could not have made representations in May 2012 about a service that would not exist for another five months.  Thus, at best, Plaintiffs provide the specificity regarding the times and places of only one alleged interstate wire communication, which fails to set forth a "'pattern of racketeering activity'" as is required by the RICO statute.  *Sys. Mgmt., Inc. v. Loiselle*, 303 F.3d 100, 103 (1st Cir. 2002) ("A 'pattern of racketeering activity' 'requires at least two acts of racketeering activity' occurring within ten years of each other.") (quoting 18 U.S.C. § 1961(5)); Am. Compl. ¶¶ 76, 80, 84, 88 (referring to "pattern[s] of racketeering activity" in Counts VII–IX).

Court already has afforded Plaintiffs the opportunity to correct their pleading deficiencies, Uber respectfully requests that this dismissal be with prejudice.

**B.    Plaintiffs Fail To Show That Uber's Alleged RICO Violations Proximately Caused Them Injury.**

In Plaintiffs' Amended Complaint, Plaintiffs revised their allegations of injury to state that Uber's alleged RICO violations "divert business from medallioned taxis that are managed by plaintiff EJT and are members of the Boston Cab Dispatch Radio Association," Am. Compl. ¶ 79, and that they "divert[] revenues and reduc[e] the value of taxi medallions" *id.* ¶¶ 85, 89. But Plaintiffs fail to allege facts showing that Uber's alleged RICO violations proximately caused their alleged harm.

Alleged RICO violations must have a "direct relation between the injury asserted and the injurious conduct alleged." *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992). The Supreme Court has applied this requirement in a very similar case, holding that, in a suit between competitors, the connection between the defendant's alleged violation of tax regulations in order to lower its prices and the plaintiff's alleged lost market share was too tenuous. *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006). The plaintiff in *Anza* claimed that the defendant was filing false tax returns, allowing it to lower its own prices and lure customers from the plaintiff. *Id.* at 457–58. The Supreme Court held that there were too many links in the causal chain between the defendant's alleged racketeering conduct (the filing of false tax returns) and the plaintiff's harm (lost sales). *Id.* at 458–59. The defendant "could have lowered its prices for any number of reasons unconnected to the asserted pattern of fraud," and the plaintiff's lost sales "could have resulted from factors other than [defendant's] acts of fraud." *Id.* If the court in *Anza* had accepted the plaintiff's theory, it would have had to determine what portion of the defendant's price drop was attributable to the fraudulent tax returns and what portion of the plaintiff's lost sales was attributable some portion of the price drop. *Id.* at 459–60. But the "element of proximate causation . . . is meant to prevent these types of intricate, uncertain inquiries from overrunning RICO litigation." *Id.* at 460.

*Anza* applies squarely here. Uber's alleged RICO violations stemming from its alleged use of interstate wires are too remote from Plaintiffs' alleged injury. Like the plaintiffs in *Anza*, Plaintiffs here are not the target of Uber's alleged racketeering conduct; instead, Uber allegedly targets and harms users of Uber, which allegedly harms Plaintiffs only indirectly. *See* Am. Compl. ¶¶ 40–41 (alleging Uber made false representations to users of the app). "[T]o the extent the [Amended Complaint] alleges a fraud with direct injury to [users of Uber], [Plaintiffs] may not step in and assert those [users'] rights." *George v. Nat'l Water Main Cleaning Co.*, 286 F.R.D. 168, 186 (D. Mass. 2012) (citing *Anza*, 547 U.S. at 460–61 (noting "[a] direct causal connection is especially warranted where the immediate victims can be expected to vindicate the laws by pursuing their own claims")). And as noted in *Anza*, if this Court sustained Plaintiffs' claims, it would have to determine what portion of Plaintiffs' alleged harm is attributable directly to Uber's alleged RICO violations, which the Supreme Court held is impermissible under RICO. *Anza*, 547 U.S. at 460.

For example, how much revenue did Boston Cab or EJT lose because Uber allegedly told consumers it would pay the full gratuity to drivers but then allegedly retained a portion of it? There is simply no way to tell. And that is precisely the type of inquiry that *Anza* forbids. The alleged diversion in revenue and drop in medallion values "could have resulted from factors other than [Uber's alleged] acts of fraud," *id.* at 458–59, or Uber's alleged use of proceeds from those alleged acts of fraud, and there is no way to identify which alleged losses are due to Uber's alleged RICO violations and which are from the innumerable other factors affecting Plaintiffs' businesses, including the nearly 1,500 medallion owners that compete with Plaintiffs. For that reason, Uber respectfully requests that this Court dismiss Plaintiffs' RICO claims with prejudice.

## C. RICO Does Not Apply To Ordinary Business Disputes.

"RICO focuses upon the 'infiltration of legitimate business by organized crime,' in significant part because, when 'organized crime moves into a business, it brings all the techniques of violence and intimidation which it used in its illegal businesses.'" *Anza*, 547 U.S.

at 484–85 (Breyer, J., concurring in part and dissenting in part) (quoting *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 517 (1985) (Marshall, J., dissenting)) (internal quotation omitted). Plaintiffs do not allege—indeed such an allegation would be absurd—that Uber has any connection to organized crime. Plaintiffs' multiple failed attempts at shoehorning their allegations into the RICO statute make clear that RICO has no application to what is, at its core, an ordinary dispute between two businesses. For that reason, Uber respectfully requests that this Court dismiss Plaintiffs' RICO claims with prejudice.

## CONCLUSION

For the foregoing reasons, Uber respectfully requests that this Court dismiss Plaintiffs' Amended Complaint in its entirety with prejudice.

DATED: August 15, 2014    QUINN EMANUEL URQUHART &
           SULLIVAN, LLP


        By /s/ Stephen A. Swedlow
          Stephen A. Swedlow
          Attorney for Uber Technologies, Inc.

Stephen A. Swedlow (admitted *pro hac vice*)
 stephenswedlow@quinnemanuel.com
Quinn Emanuel Urquhart & Sullivan, LLP
500 W. Madison St., Suite 2450
Chicago, IL 60661
Telephone: (312) 705-7400
Facsimile: (312) 705-7401

Michael Mankes (BBO #662127)
 mmankes@littler.com
Littler Mendelson, P.C.
One International Place, Suite 2700
Boston, MA 02110
Telephone: (617) 378-6000
Facsimile: (312) 737-0052

**CERTIFICATE OF SERVICE**

      I, Stephen A. Swedlow, hereby certify that on August 15, 2014, this document was filed through the District of Massachusetts's CM/ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.  Paper copies will be sent by First Class Mail to those not registered.

                                           /s/ Stephen A. Swedlow
                                           Stephen A. Swedlow