United States District Court
District of Massachusetts

```
_____
                              )
BOSTON CAB DISPATCH, INC. and )
EJT MANAGEMENT, INC.,         )
                              )
          Plaintiffs,         )
                              )      Civil Action No.
     v.                       )      13-10769-NMG
                              )
UBER TECHNOLOGIES, INC.,      )
                              )
          Defendant.          )
_____)
```

## MEMORANDUM & ORDER

**GORTON, J.**

Plaintiffs Boston Cab Dispatch, Inc. ("Boston Cab") and EJT Management, Inc. ("EJT") allege that defendant Uber Technologies, Inc. ("Uber") violates various unfair competition and racketeering laws by providing a private car service that allows users to call taxicabs associated with Boston Cab and other dispatch services without complying with Boston taxicab regulations.

Plaintiffs' amended complaint asserts causes of action against Uber for 1) violation of M.G.L. c. 93A, § 11 based on unfair competition (Count I), 2) unfair competition under Massachusetts common law (Count II) and 3) various violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1962(a-c) (Counts III-V).

-1-

For the reasons that follow, the motion will be allowed, in part, and denied, in part.

## I.  **Background**

The subject dispute arose after Uber entered the market for private transportation services in Boston.  The crux of plaintiffs' complaint is that Uber has gained an unfair competitive advantage over traditional taxicab dispatch services and license-holders because it avoids the costs and burdens of complying with extensive regulations designed to ensure that residents of Boston have access to fairly priced and safe transportation options throughout the city and yet reaps the benefits of others' compliance with those regulations.

The main source of regulation of the Boston taxicab industry is the Police Commissioner for the City of Boston ("the Commissioner"), who is authorized by statute to regulate the taxi business in Boston.  In exercising that authority, the Commissioner requires anyone who drives or is "in charge of" a "hackney carriage" (i.e. taxicab) to possess a license known as a "taxicab medallion".  Applicants for taxicab medallions must satisfy certain criteria with respect to driving and criminal history.  In 2008, the Commissioner issued a comprehensive set of regulations under Boston Police Department Rule 403 ("Rule 403").  That rule requires all taxicab operators to, inter alia, possess medallions, maintain a properly equipped and functioning

-2-

taxicab, refrain from cell phone use while operating a taxicab and belong to an approved dispatch service or "radio association".

Pursuant to Rule 403, radio associations are required to provide 24-hour dispatch capability, two-way radio service and discount reimbursements for the elderly.  They must also keep records of their dispatch services and, specifically, where each taxicab is dispatched at any given time.  Moreover, each radio association maintains specific colors and "markings" approved by the Inspector of Carriages and taxicab operators must paint their taxicabs in the colors and markings of the association to which they belong.

Plaintiff Boston Cab is an approved radio association under Rule 403.  It has contracted with the owners of 500 medallions (i.e. 500 licensed taxicab operators) who pay weekly membership fees to Boston Cab and paint their taxicabs with Boston Cab's colors and markings in exchange for Boston Cab's dispatching services.

Plaintiff EJT has contracted with the owners of 370 Boston medallions to manage all aspects of the ownership, licensing and leasing of the owners' medallions and the taxis bearing these medallions.  It also has the authority to seek the protection of those 370 taxicab owners/medallion holders' rights against all forms of unfair competition and trademark infringement.

-3-

Defendant Uber provides a tool for requesting private vehicles-for-hire to users who download Uber's free "smart phone application" ("the Uber app").  Users who open the Uber app on their mobile phones are shown a map of their location or designated pick-up point and the available Uber-affiliated vehicles in that vicinity.  The user can select a kind of car based on price and the number of seats they need.  Uber offers four kinds of vehicles-for-hire: 1) "Uber Black Cars", which are unmarked four-seat sedans, 2) "Uber SUVs", which are unmarked SUVs that seat six passengers, 3) "Uber Taxis", which are vehicles operated by Boston taxicab drivers and 4) "UberX," which are cut-rate, unlicensed personal vehicles owned by individual drivers.

Uber requires all drivers of Uber-affiliated vehicles to carry mobile telephones.  They must respond to assignments generated by the Uber computer system "within seconds" or they will lose the job.  The fare for each ride arranged through the Uber app is charged automatically to the customer's preauthorized credit card and therefore Uber-affiliated drivers cannot accept cash or other credit cards.

Uber does not own any taxicabs or taxicab medallions. Instead, taxicab drivers who are subject to Rule 403, own or lease medallions and belong to radio associations such as Boston Cab have agreed to be available for hire through Uber while they

-4-

are working shifts and subject to dispatch by their radio associations. Their fares are calculated based on the flat rate applicable to all Boston taxicab drivers. Uber adds a $1 "fee" and a 20% "gratuity" to the flat rate and therefore the final charge exceeds the maximum that taxicabs are permitted to charge under Rule 403. While Uber's website represents that the 20% gratuity is "for the driver", drivers in fact only receive a 10% gratuity and Uber retains the other 10%.

Uber Black Cars, Uber SUVS and UberX, in contrast to Uber Taxis, do not comply with Rule 403 regulations with respect to, inter alia, 1) membership in approved radio associations or dispatch services, 2) regular inspections, 3) partitions between drivers and passengers, 4) panic buttons and GPS tracking to allow customers to alert police when they are in danger, 5) criminal background checks of drivers, 6) non-discrimination with respect to passengers with handicaps, 7) use of mobile telephones and 8) taximeters and flat rates.

## II. **Procedural history**

Plaintiffs filed suit against defendant in Suffolk Superior Court in March, 2013, alleging 1) violation of § 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B) (Count I), 2) violation of § 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A) (Count II), 3) violation of M.G.L. c. 93A, § 11 based on Uber's allegedly unfair and deceptive acts and

practices (Count III), 4) violation of c. 93A, § 11 based on
Uber's unfair competition (Count IV), 5) unfair competition
under Massachusetts common law (Count V), 6) interference with
contractual relationships (Count VI) and 7) various violations
of the Racketeer Influenced and Corrupt Organizations Act
("RICO"), 18 U.S.C. §§ 1962(a-c) (Counts VII, VIII and IX).

Uber timely removed the case to this Court and filed a
motion to dismiss the complaint in its entirety the following
month.  That motion was referred to Magistrate Judge Marianne
Bowler for a Report and Recommendation ("R&R").  Magistrate
Judge Bowler issued an R&R in February, 2014, recommending 1)
dismissal of Count I with prejudice, 2) denial of the motion to
dismiss with respect to Counts II through V and 3) dismissal of
Counts VI through IX without prejudice.  Uber timely objected to
Judge Bowler's recommendations with respect to Counts II through
V.  Plaintiffs did not file an objection.

In March, 2014, this Court accepted and adopted the
Magistrate Judge's recommendations with respect to Count I and
Counts IV through IX but sustained Uber's objections with
respect to Counts II and III and dismissed those Counts with
prejudice.

Plaintiffs filed an amended complaint in July, 2014.  Uber
moved to dismiss the amended complaint the following month and

the Court held a hearing on the defendant's motion to dismiss in November, 2014.

## III. <u>Defendant's motion to dismiss plaintiffs' amended complaint</u>

### A.    Legal standard

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face. <u>Bell Atl. Corp.</u> v. <u>Twombly</u>, 550 U.S. 544, 570 (2007).  In considering the merits of a motion to dismiss, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. <u>Langadinos</u> v. <u>Am. Airlines, Inc.</u>, 199 F.3d 68, 69 (1st Cir. 2000).  Yet "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," do not suffice to state a cause of action. <u>Ashcroft</u> v. <u>Iqbal</u>, 556 U.S. 662, 678 (2009). Accordingly, a complaint does not state a claim for relief where the well-pled facts fail to warrant an inference of anything more than the mere possibility of misconduct. <u>Id.</u> at 679.

### B.    Violation of M.G.L. c. 93A, § 11 based on unfair competition (Count I)

Count I of the amended complaint alleges that Uber unfairly competes with plaintiffs, in violation of Chapter 93A, by 1) "operating" its services without incurring the expense of compliance with Massachusetts law and Boston ordinances and 2)

diverting revenues that would otherwise be paid to taxis and thereby reducing the value of taxi medallions.

Chapter 93A proscribes those engaged in trade or commerce from employing "unfair methods of competition and unfair or deceptive acts or practices" and authorizes a business "who suffers any loss of money or property" as a result to initiate a suit against those engaging in such practices. M.G.L. c. 93A, §§ 2, 11.  In the absence of a causal connection between the alleged unfair acts and the claimed loss, there can be no recovery. Massachusetts Farm Bureau Fed'n, Inc. v. Blue Cross of Massachusetts, Inc., 403 Mass. 722, 730 (1989); see also Arthur D. Little, Inc. v. Dooyang Corp., 147 F.3d 47, 56 (1st Cir. 1998) (holding that the "loss of money or property must stem from" the Chapter 93A misconduct).

### 1.   Causal connection

Uber contends that plaintiffs fail to plead facts showing that it proximately caused them any injury because plaintiffs 1) have not explained why any revenues obtained by Uber were at the plaintiffs' expense rather than from other taxi companies, 2) do not explain why the alleged diversion in revenues is due to Uber's conduct rather than the conduct of the other radio associations in the city and 3) fail to plead any facts with respect to their alleged lost revenues or the reduction in the value of their medallions.

Uber's argument that the plaintiffs must negate all potential causes of loss other than those related to Uber's activities in order to allege damages causation exceeds the pleading requirements necessary to survive a motion to dismiss. At the pleading stage, plaintiffs must state a facially plausible legal claim and the Court must take non-conclusory factual allegations in the complaint as true. Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 11 (1st Cir. 2011).

Contrary to Uber's contention that the plaintiffs' lost business might have gone to other medallioned taxis, common economic sense suggests that Uber's expansion of its car service business would have a high likelihood of affecting the revenue of all Boston medallioned taxis, including the plaintiffs. See Katin v. Nat'l Real Estate Info. Servs., Inc., 2009 WL 929554, at *7 (D. Mass. Mar. 31, 2009) (explaining that the Twombley standards for pleading injury in fact can be met by establishing the overall effect of the defendant's unlawful behavior on the relevant market and the likelihood of harm to the plaintiff). If Uber's argument were to prevail, any plaintiff with more than two competitors would be unable to state a claim.

The First Circuit has confirmed that economic realities can be used to analyze injury-in-fact allegations at the pleading stage. See Adams v. Watson, 10 F.3d 915, 923 (1st Cir. 1993) (noting that "basic economic theory...transcends utter

randomness by positing elemental laws of cause and effect
predicated on actual market experience and *probable* market
behavior."); see also Am. Soc. of Travel Agents, Inc. v.
Blumenthal, 566 F.2d 145, 157 (D.C. Cir. 1977) (acknowledging
that "all claims of competitive injury are to some extent
speculative, since they are predicated on the independent
decisions of third parties; i.e., customers. However, economics
is the science of predicting these economic decisions...").

Moreover, plaintiffs claim that they will be able to show
that Uber's vehicles have deprived revenue from all Boston
medallioned taxis, including the plaintiffs.  Accordingly,
plaintiffs have adequately pled the causal connection between
Uber's alleged unfair acts and the diversion of revenue
experienced by plaintiffs "to raise a reasonable expectation
that discovery will reveal evidence of" their allegations of
lost revenue. Twombly, 550 U.S. at 556.  Defendant's motion to
dismiss Count I of plaintiffs' amended complaint will be denied.

## 2.   Scope of the unfair competition claims

Defendants contend that plaintiffs have recast their
previously-dismissed tortious interference and false association
claims to expand the scope of their unfair competition claims.
They emphasize that the Court already dismissed 1) plaintiffs'
claim under the Lanham Act and the corresponding state law claim
under Chapter 93A, along with the underlying allegations that

-10-

Uber falsely associated itself with plaintiffs by contracting with drivers of plaintiffs' taxicabs to allow Uber users to request those taxis through its application and 2) plaintiffs' tortious interference claim based on Uber's alleged interference with contracts between plaintiffs and a third-party payment processor and between plaintiffs and third-party taxi drivers. Defendants assert that the underlying allegations used in support of the dismissed claims cannot, therefore, be resurrected under the unfair competition claim.

The Court disagrees to the extent that the allegations are factual or are legal arguments upon which the Court has not yet ruled.  Plaintiffs are permitted to expand the factual basis for their unfair competition claims.  That is to be expected in response to the Court's authorization to file an amended complaint.  To the extent plaintiffs are re-asserting an already-discredited legal argument, such allegations may not be used to support their claims.

### C.  Common law unfair competition claim (Count II)

Plaintiffs allege that Uber unfairly competes in violation of Massachusetts common law by 1) operating its services without incurring the expense of compliance with Massachusetts law and Boston ordinances, 2) diverting revenues for credit card processing that plaintiffs are contractually obligated to pay to Creative Mobile Technologies ("CMT"), the company that installs

credit card processing equipment in Boston Cab's taxis and 3) diverting revenues that would otherwise be paid to taxis and thus reducing the value of taxi medallions.

As an initial matter, this Court, in accepting and adopting the Magistrate Judge's R&R, has already concluded that the alleged diversion of revenues for credit card processing claim does not equate to money damages to Boston Cab or EJT.  It is CMT, not plaintiffs, that suffers the loss in the form of credit card processing fees.  Such an allegation cannot be a basis for plaintiffs' common law unfair competition claim.  Count II is therefore supported by the same two factual allegations made in Count I.

Uber contends that plaintiffs' common law claim is entirely derivative of their claim for unfair competition under Chapter 93A and that it should fail because the Chapter 93A claim fails. The Court has found that plaintiffs have stated a claim with respect to Count I and therefore that argument is unavailing.

Accordingly, the Court will deny the motion to dismiss Count II.

### D.  Violation of the RICO, 18 U.S.C. §§ 1962(a)-(c) (Counts III, IV and V)

In their amended complaint, plaintiffs allege various RICO violations by Uber based on the predicate acts of wire fraud in violation of 18 U.S.C. § 1343.  They claim that Uber uses

interstate wires to transmit false information regarding fares for taxi rides.  To establish a claim for wire fraud, plaintiffs must prove

> (1) a scheme to defraud based on false pretenses; (2) the defendant's knowing and willing participation in the scheme with the specific intent to defraud; and (3) the use of interstate...wire communications in furtherance of the scheme.

Sanchez v. Triple-S Management, Corp., 492 F.3d 1, 9-10 (1st Cir. 2007).

Plaintiffs allege that Uber's schemes to defraud based on false pretenses arise from the misrepresentations about the true recipient of the gratuity charged to users of Uber Taxis.  In particular, they contend that the schemes deceive clients into believing that they are paying a 20% gratuity to the driver, when actually, the drivers receive only 10% and Uber pockets the rest.  The revenues generated by such alleged misrepresentation (so say the plaintiffs) support Uber's expansion of its operations, thereby violating 18 U.S.C. § 1962(a), which makes it unlawful for anyone who receives income derived "from a pattern of racketeering activity...to use or invest...any part of such income" in the operation of any enterprise affecting interstate commerce.

Plaintiffs further claim that Uber's fraudulent representations violate 18 U.S.C § 1962(b), which prohibits any person "from acquiring or maintaining...any...control over an

enterprise through a pattern of racketeering activity," because Uber's expanding Boston customer base induces increasing numbers of Boston taxi drivers to become Uber-affiliated taxis, thereby enabling Uber to exercise an increasing level of control over the taxi operations in Boston.

Finally, plaintiffs allege that Uber's conduct violates Section 1962(c), which prohibits

> any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.

18 U.S.C § 1962(c).

### 1.    Pleading with particularity

The Court, in adopting Magistrate Judge Bowler's R&R, accepted her determination that the plaintiffs' original complaint adequately pled a scheme to defraud and an intent to deceive.  With respect to the third prong of the wire fraud claim, however, plaintiffs failed to specify the time and place of the use of intestate wire communications to satisfy the particularity requirement of Federal Rules of Civil Procedure 9(b).  The RICO Counts were dismissed without prejudice and plaintiffs were afforded the opportunity to amend their complaint to particularize the time and place of the use of interstate wire communications.

In their amended complaint, plaintiffs 1) allege that the violation occurred continuously between mid-October, 2012 and March 13, 2013 or later through the Uber website, 2) identify two individuals by name who signed up for Uber on May 27, 2012 and December 29, 2012 and 3) claim that every one of the thousands of Massachusetts residents who signed up for Uber was falsely informed by the Uber website as part of the sign-up process.[1]

As the defendant notes, one of the individuals named by the plaintiffs signed up for Uber approximately three months before Uber began its taxi operation in Massachusetts.  Uber could not have made representations during the sign-up process in May, 2012 about a non-existent service.  Nonetheless, the Court concludes that plaintiffs have adequately pled with particularity the time and place of the alleged wire fraud. Even though they are wrong about one individual, plaintiffs allege that every individual who signed up for the service between October, 2012 and March, 2013 was falsely informed about gratuities through the website during the sign up process.  That satisfies the heightened pleading requirement of Fed. R. Civ. P. 9(b) and sets forth an allegation of a "pattern of racketeering activity" as is required by the RICO statute. Sys. Mgmt., Inc.

---

[1] Paragraph 75 of the amended complaint states that the violation began in "mid-October, 2011" instead of "mid-October, 2012." The Court perceives a typographical error.

v. Loiselle, 303 F.3d 100, 103 (1st Cir. 2002) (noting that a pattern of racketeering activity requires at least two acts of racketeering activity occurring within ten years of each other).

### 2.   Proximate causation

Private actions for RICO violations are "cognizable...only if the defendant's alleged violation proximately caused the plaintiff's injury." Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 461-62 (2006).  The proximate cause analysis requires a finding of "direct relation between the injury asserted and the injurious conduct alleged." Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258, 268 (1992).

Defendant contends that plaintiffs fail to allege facts showing that Uber's alleged RICO violations proximately caused harm to the plaintiffs because the purported misrepresentations about Uber Taxi gratuity charges directly harms users of Uber (who are charged twice as much for gratuity than their drivers actually receive), but at most only indirectly harms the plaintiffs.  Defendant further contends that plaintiffs' claims cannot be sustained because it is impossible to determine what portion of plaintiffs' purported revenue loss and reduction in medallion values are attributable directly to Uber's alleged RICO violations. See Anza, 547 U.S. at 459 ("A court considering the claim would need to begin by calculating the portion of [the

alleged harm] attributable to the alleged pattern of racketeering activity.").

Plaintiffs do not appear to dispute defendant's arguments regarding their failure to plead proximate causation with respect to 18 U.S.C §§ 1962(b) or (c).  The Court will therefore address those provisions of the RICO statute only briefly.

Plaintiffs contend that defendant violates Section 1962(b) because its RICO activity leads to increased occupation of taxis and taxi drivers in the city.  The causation chain, however, between the alleged misrepresentations to customers about gratuities and Uber's increased control over the taxi operations in Boston is too attenuated to satisfy proximate cause. See Anza, 547 U.S. at 461 ("When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injury.").  This Court concludes that plaintiffs have not adequately pled their claim under § 1962(b) and Count IV of plaintiffs' amended complaint will therefore be dismissed.

The Court also concludes that plaintiffs cannot maintain their Section 1962(c) claim because they have failed to allege that Uber's misrepresentations about gratuities caused them direct injury.  The direct victims of the alleged RICO violation are the Uber customers who pay the 20% gratuity surcharge.  As the United States Supreme Court has emphasized,

-17-

> [a] direct causal connection is especially warranted
> where the immediate victims can be expected to
> vindicate the laws by pursuing their own claims.

Anza, 547 U.S. at 460-61. Here, the direct victims of the alleged fraud are capable of pursuing their own claims. Plaintiffs are affected only indirectly by the alleged gratuity misrepresentation because the additional revenue accrued by Uber presumably allows it to expand its market share at plaintiffs' expense. Because the alleged violation does not lead directly to plaintiffs' damages, defendant's motion to dismiss Count V of the amended complaint will be allowed.

The frame of reference for the proximate cause analysis for Section 1962(a) differs from that in subsections (b) and (c). See Ideal Steel Supply Corp. v. Anza, 652 F.3d 310, 321 (2d Cir. 2011) ("Subsection (a), in contrast, focuses the inquiry on conduct different from the conduct constituting the pattern of racketeering activity."). A viable claim for a violation of Section 1962(a) must allege that the use or investment of racketeering income, rather than the pattern of racketeering activity itself, was the proximate cause of the plaintiffs' injuries. See Ideal Steel, 652 F.3d at 323; Sybersound Records, Inc. v. UAV Corp., 517 F.3d 1137, 1149 (9th Cir. 2008).

Plaintiffs contend that they have adequately pled proximate causation because Uber's unlawfully obtained revenue was used

and invested to expand Uber's operations which adversely affects
plaintiffs' revenue and the value of their medallions.  They
contend that such allegations meet the Twombly standard, which
does not impose a "probability requirement" at the pleading
stage and

> simply calls for enough facts to raise a reasonable
> expectation that discovery will reveal evidence of
> illegal[ity].

550 U.S. at 556.

Defendant responds that plaintiffs have failed to allege
that the alleged racketeering income is either the but-for cause
or the proximate cause of their injury because 1) plaintiffs
cannot show that the income Uber allegedly invested to expand
its business was racketeering income at all because consumers
may have used Uber for reasons unrelated to the alleged
misrepresentations, 2) Uber Black and Uber SUV, whose operations
are unrelated to the alleged racketeering activity, were
generating income for a year prior to the introduction of Uber
Taxi and therefore the alleged harm to the plaintiffs would have
occurred regardless of its investment of the so-called
racketeering income and 3) other factors and other competitors
may have caused plaintiffs' damages.

Although the defendant's arguments may be meritorious, they
do not negate the causal connection alleged by plaintiffs and it
is therefore more appropriate to address such arguments at the

summary judgment stage.  The Court concludes that plaintiffs have adequately pled a claim under 18 U.S.C. § 1962(a) and the motion to dismiss Count III of plaintiffs' amended complaint will be, accordingly, denied.

## ORDER

In accordance with the foregoing, defendant's motion to dismiss plaintiffs' amended complaint (Docket No. 54) is, with respect to Counts IV and V, **ALLOWED**, but is otherwise **DENIED**.

**So ordered.**

                                  /s/ Nathaniel M. Gorton
                                  Nathaniel M. Gorton
                                  United States District Judge

Dated January 26, 2015